# 𝔖taunton

RAVEN RED ASH COAL COMPANY, INC. v. ESTIL BALL.

September 11, 1946.

Record No. 3066.

Present, All the Justices.

The opinion states the case.

*Crockett & Gillespie*, for the plaintiff in error.

*S. H. & George C. Sutherland*, for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

Plaintiff, Estil Ball, stated, in his notice of motion, that he was entitled to recover $5,000 from the defendant for the use and occupation of an easement across his land. Defendant denied any liability. The trial court entered judgment for plaintiff in the sum of $500 on the verdict returned by the jury. From that judgment, defendant obtained this writ of error.

There is no substantial conflict in the evidence. Plaintiff proved that he is the present owner of approximately 100 acres of land lying in Russell county which was a part of a 265-acre tract formerly owned by Reuben Sparks, and that Reuben Sparks and his wife, by deed dated November ·19, 1887, conveyed the coal and mineral rights on the 265-acre tract to Joseph I. Doran and William A. Dick. The deed conveying the mineral rights to Doran and Dick, their heirs and assigns, conveyed an easement expressed in the following language: "The right to pass through, over and upon said tract of land by railway or otherwise to reach any other lands belonging to the said Joseph I. Doran and Wm. A. Dick or those claiming such other lands by, through or under them, for the purpose of digging for, mining, or otherwise securing the coal and other things hereinbefore specified, and removing same from such other land."

It seems that on or about November 19, 1887, Doran and Dick owned approximately 3;000 acres of land lying in Russell and Tazewell counties, Virginia, estimated to contain nine million tons of coal. By mesne conveyances the Raven Red Ash Coal Company became the lessee of all the coal and mineral rights on and under this 3,000 acres. Probably 25 years ago the Raven Red Ash Coal Company, under the easement purchased of Reuben Sparks, built a tramway or railroad through and over the 265 acres formerly owned by Sparks, which right of way extends for approximately 2800 feet across the 100 acres of land now owned by plaintiff.

The Raven Red Ash Coal Company acquired coal and mineral rights on the following tracts of land not originally owned by Doran and Dick: 3¼ acres now owned by S. T.

Newberry and wife, 29½ acres now owned by Henry Bird, 29 1/9 acres now owned by Ronda Blankenship, 17 acres now owned by Will Bird, and another small tract now owned by W. P. Dixon.

The testimony reveals that, during the past five years, defendant transported 49,016 tons of coal mined from the five small tracts over the tramway erected across plaintiff's land and transported 950,000 tons of coal mined from lands formerly owned by Doran and Dick. There remains to be mined approximately 8,000,000 tons of coal on the tracts formerly owned by Doran and Dick and 180,000 tons of coal on the other small tracts.

Defendant's six assignments of error present two questions: (1) Whether the facts entitle plaintiff to maintain an action of trespass on the case in assumpsit; and (2) what test should be applied to determine the amount of damages to be allowed.

Ball concedes that defendant exercised its right in transporting across plaintiff's land the 950,000 tons of coal mined from tracts of land formerly owned by Doran and Dick, but contends that it violated the property rights of plaintiff in transporting the 49,016 tons of coal mined from the five small tracts described above across plaintiff's land to defendant's tipple. This principle was settled by this court in *Clayborn v. Camilla Red Ash Coal Co.*, 128 Va. 383, 105 S. E. 117, 15 A. L. R. 946. See *Davenport v. Lamson*, 21 Pick. (Mass.) 72; *Appleton v. Fullerton*, 1 Gray (Mass.) 186; *Watts v. Johnson, etc., Real Estate Corp.*, 105 Va. 519, 54 S. E. 317; *Moore v. Lackey Mining Co.*, 215 Ky. 71, 284 S. W. 415, 48 A. L. R. 1402; *Henry v. Tennessee Elec. Power Co.*, 5 Tenn. App. 205.

These cases hold that every use of an easement not necessarily included in the grant is a trespass to realty and renders the owner of the dominant tenement liable in a tort action to the owner of the servient tenement for all damages proven to have resulted therefrom, and, in the absence of proof of special damage, the owner of the servient tenement may recover nominal damages only.

Plaintiff did not prove any specific damage to the realty by the illegal use of the easement, and admitted that he suffered "no more damage other than the exclusion of us during that moment and that's the reason we have sued for use and occupancy."

It thus appears that plaintiff bases his sole ground of recovery on the right to maintain assumpsit for use and occupation. In his brief, plaintiff states: "That plaintiff was entitled to recover for the use of hauling this 49,016 tons of coal 2,800 feet over his land has been settled in this state since the case of *Clayborn* v. *Camilla Red Ash Coal Co.*, 128 Va. 383, 105 S. E. 117, 15 A. L. R. 946; and that he could sue in this form for *use and occupation* has been held from the beginning of our system of government; although controverted in some states, *Sutton* v. *Mandeville*, 1 Munf. (15 Va.) 407; *Eppes* v. *Cole*, 4 Hen. & M. (14 Va.) 161, 4 Am. Dec. 512; 4 Min. Inst. (3rd Ed.) 164; Code sec. 5519."

The authorities cited do not extend the right to maintain an action of assumpsit as far as the plaintiff claims. In the *Clayborn Case, supra*, it was held that a deed, conveying to a coal mining company all the coal in or under a specified tract of land "with the right to mine and remove the same," did not convey to the company the right to use an underground haulway through the tract for transporting coal mined by the company from adjacent tracts, and that such use of the haulway placed an additional burden upon the easement.

Judge Kelly, speaking for the court in discussing this phase of the case, said: "The use of it (the haulway) for any other purpose is a trespass, and the continued and daily use which the company is now making of it is a continued trespass, for which the only adequate remedy is an injunction."

In *Eppes* v. *Cole, supra* (decided in 1809 before the enactment of the pertinent provision now found in Code of 1919, sec. 5519), it was held that a landowner could main-

tain an action of assumpsit where the facts showed that he had permitted defendant to use the property and that defendant had promised to satisfy him for such use and occupation.

The decision in *Sutton* v. *Mandeville, supra,* decided in 1810, was controlled by the opinion in *Eppes* v. *Cole, supra,* and, in addition, the opinion expressly held that assumpsit for use and occupation lies on an implied as well as an express promise. See *Briggs* v. *Hall,* 4 Leigh (31 Va.) 484.

Mr. Minor (4 Minor's Inst., 3 Ed., pp. 164-5) refers to the cases last cited and says: "It must be observed, that as the action *for use and occupation* is always founded on the idea of a *contract,* express or implied, to pay a reasonable compensation for such use, so it has ever been held that, if it appears at the trial that the occupancy of the lands was by a title *adverse to that of the plaintiff,* it defeated the action, by disproving the existence of any contract."

██ The only other authority cited by plaintiff to support his contention is section 5519 of the Code of 1919.* This entire section presupposes the relation of landlord and tenant. The pertinent provision reads: "A *landlord* may also, by action, recover (where the agreement is not by deed) a reasonable satisfaction for the use and occupation of lands; * * * ." (Italics supplied.)

The provision quoted was taken from the English statute, Geo. II, ch. 19, sec. 14, but, even before the Virginia statute was enacted, this court held, in *Eppes* v. *Cole, supra,* that the English "statute was made for the benefit of landlords, and to prevent tenants from putting them to difficulties (after enjoyment of the lands) in recovering their rents

*"Rent of every kind may be recovered by distress or action. A landlord may also, by action, recover (where the agreement is not by deed) a reasonable satisfaction for the use and occupation of lands; on the trial of which action, if any parol demise, or any agreement (not being by deed) whereon a certain rent was reserved, shall appear in evidence, the plaintiff shall not therefor be nonsuited, but may use the same as evidence of the amount of his debt or damages. In any action for rent, or for such use and occupation, interest shall be allowed as on other contracts."

under parol demises or agreements; for, before the statute, in actions for the use and occupation, the landlords were continually nonsuited, by the tenants' proving, at the trial, some parol demise, or memorandum in writing, amounting to a demise; for, in that case, the landlord ought to have brought an action of debt, and not case, on assumpsit; which was remedied by the statute. That this was the true reason for making the statute, will appear by the cases on the subject, * * * ."

Since plaintiff failed to prove that he gave express permission for the additional use of the easement or that defendant promised to pay for such use, it became necessary for the plaintiff to establish facts and circumstances from which the law will imply the promise to pay for use and occupancy.

While the plaintiff has not cited, and we have not found, any controlling Virginia authority on this phase of the case, a short review of the theory and modern development of the action of assumpsit will be helpful in deciding the question.

Assumpsit is classified as an action *ex contractu* as distinguished from an action *ex delicto*. Hence, in order to sustain the action, it is necessary for the plaintiff to establish an express contract or facts and circumstances from which the law will raise an implication of a promise to pay. In such a case, a plaintiff may waive the tort and institute his action in assumpsit for money had and received. If the defendant has not parted with the personalty but has converted it to his own use, the owner still has a right to waive the tort and proceed upon the theory of an implied contract of sale to the wrongdoer. The contract implied is one to pay the value of the property at the time of conversion. 1 Cooley on Torts, 4 Ed., sec. 61.

Different promises may be inferred from different acts or omissions. If a person has seized and sold property belonging to the plaintiff, the promise implied is that the defendant received the money for the plaintiff's use. Where no money has been actually received, the implied undertaking is that

the wrongdoer would pay the value or price of the property taken.

The overwhelming majority of the decided cases holds that where a person has illegally seized another's personal property and converted it to his own use, the owner may bring trespass, trover, detinue or assumpsit. By bringing the action of assumpsit, the owner waives all claim for wrongful taking, detention and conversion. *Lawson* v. *Lawson* 16 Gratt. (57 Va.) 230, 80 Am. Dec. 702; *Sangster* v. *Commonwealth,* 17 Gratt. (58 Va.) 124; *Tidewater Quarry Co.* v. *Scott,* 105 Va. 160, 52 S. E. 835, 115 Am. St. Rep. 864, 8 Ann. Cas. 736; *Manchester Home Bldg., etc., Ass'n* v. *Porter,* 106 Va. 528, 537, 56 S. E. 337; *Norfolk* v. *Norfolk County,* 120 Va. 356, 91 S. E. 820; *Buchanan* v. *McClain,* 110 Ga. 477, 35 S. E. 665; Anno., Ann. Cas. 1913D, 231; Burks Pl. & Prac., 3 Ed., p. 174 *et seq.*; Pomeroy's Remedies and Remedial Rights, 2 Ed., pp. 630-635.

Where a naked trespass is committed, whether upon the person or property, assumpsit will not lie. If one commits an assault and battery upon another, it is absurd to imply a promise by the defendant to pay the victim a reasonable compensation. There is no basis for an implication of a contract where cattle inadvertently invade a neighbor's premises and trample down and destroy his crops. In each instance, a wrong and nothing more and nothing less has been committed. On the other hand, if a trespasser invades the premises of his neighbor, cuts and removes timbers or severs minerals from the land and converts them to his own use, the owner may waive the tort and sue in assumpsit for the value of the materials converted. 1 Cooley on Torts, 4 Ed., sec. 61, p. 181. Such a person has depleted the value of the owner's property and materially enhanced his own possessions.

The same principle is stated in 4 Am. Jur., 503-4, as follows: " * * * , in the absence of a contractual relationship, the general rule is that where one person derives a benefit from the commission of a tort against the property of

another, the law will, at the election of the person injured, imply a contract on the part of the tort-feasor to pay to the person injured a just remuneration for the damages sustained as a consequence of the wrong, and on this contract implied by law general assumpsit lies. But a promise will be implied in such a case only because *it will be deemed that it was intended that it should be, or because natural justice requires it in consideration of some benefit received,* and where no benefit accrues, or is intended to accrue, to the tort-feasor, the action of assumpsit cannot, as a general rule, be substituted for the proper form of action on the tort." (Italics supplied.)   See 1 C. J. S., p. 1131.

The duty to pay damages for tort does not necessarily imply a promise to pay them, hence a party cannot convert a mere tort action by electing to bring his action on contract. The old rule that what was a tort in its inception could not be made the basis of an implied contract has been greatly relaxed in most jurisdictions. The authorities are not in accord as to the extent of this relaxation. 1 C. J. S. 1129.

The general rule stated in the majority of cases we have found is that, in an action for use and occupation, or for damages to realty, based on assumpsit, the plaintiff must prove that the defendant occupied the premises with his permission, either express or implied, or that the trespasser obtained something from the soil, such as growing crops, timber or ore, and appropriated the same to his own use. If the trespasser simply used the property of another to save himself inconvenience or even expenditure of money, the owner cannot maintain an action of debt or assumpsit. See *Webster* v. *Drinkwater*, 5 Greenl. (Me.) 319, 17 Am. Dec. 238, & note; *Wiggin* v. *Wiggin*, 6 N. H. 298; *Ackerman* v. *Lyman*, 20 Wis. 478; *Lockwood* v. *Thunder Bay River Boom Co.*, 42 Mich. 536, 4 N. W. 292; *Hurley* v. *Lameraux*, 29 Minn. 138, 12 N. W. 447; *Boston* v. *Binney*, 11 Pick. (Mass.) 1, 22 Am. Dec. 353; *Dixon* v. *Ahern*, 19 Nev. 422, 14 P. 598; *Downs* v. *Finnegan*, 58 Minn. 112, 59

N. W. 981, 49 Am. St. Rep. 488; *Thompson* v. *Fox*, 21 Misc. 298, 47 N. Y. S. 176; *Cunningham* v. *Horton*, 57 Me. 420; *Adsit* v. *Kaufman*, 121 F. 355, 356; *Woodruff* v. *Zaban & Son*, 133 Ga. 24, 65 S. E. 123, 134 Am. St. Rep. 186, 17 Ann. Cas. 974; *Hayes* v. *Fong Moon*, 127 Minn. 404, 149 N. W. 659; *Cavanaugh* v. *Cook*, 38 R. I. 25, 94 A. 663; *Nelson* v. *Gibson*, 90 Vt. 423, 98 A. 1006; *Chafin* v. *Gay Coal, etc., Co.*, 113 W. Va. 823, 169 S. E. 485; 2 Taylor, Landlord and Tenant, sec. 635; *B. B. Ford & Co.* v. *Atlantic Compress Co.*, 138 Ga. 496, 75 S. E. 609, Ann. Cas. 1913D, 226, 228 (note); 3 Albany Law Journal 141; 12 Enc. of Pl. & Prac., pp. 844-7; 2 Harvard Law Review 377; Restatement of the Law of Restitution, sec. 129.

The precise question has never been decided in this jurisdiction. If the rule in force in the majority of States is followed, the landowner will be placed in this position: If he maintains an action for tort, he will be limited to nominal damages only. He may obtain an injunction and restrain the defendant from the further unlawful use of the easement, and thus indirectly, perhaps, force him to agree to pay for future additional burdens imposed on the easement. Such proceedings would not give the owner compensation for past illegal use of his property, although the wrongdoer had received and retained substantial benefits by reason of his own wrongs.

The plaintiff relies upon the following quotation from Jaggard on Torts, pp. 296-7, found in Burks Pl. & Prac., 3 Ed., p. 174: " 'Wherever a person commits a wrong against the estate of another, with the intention of benefiting his own estate, the law will, at the election of the party injured, imply a contract on the part of the wrongdoer to pay the party injured the full value of all benefits resulting to such wrongdoer; and, in such case, the injured party may elect to sue upon the implied contract for the value of benefits received by the wrongdoer.' The legal presumption of the implied contract being *conclusive*, the defendant will not be permitted to set up his tort in order to defeat the implied promise."

The principle stated in the quotation from Jaggard is

modified by Judge Burks in the same section as follows: "As appears by the general statement of the rule given earlier in this section, the fiction of an *implied promise* proceeds on the idea that the defendant's *estate* has been enriched and the plaintiff's diminished by the wrongful act of the defendant. Hence the implied *assumpsit*. It follows that where the tort in question is a mere *naked trespass*, such as an assault and battery, or an injury (unknown to the owner) done by trespassing cattle, there is no ground for any implication of a contract. Such acts would be simple wrongs, nothing more, and the plaintiff's only remedy would be in a tort action."

This indicates that Judge Burks was inclined to the view expressed in the majority opinion in *Phillips* v. *Homfray*, 24 Chan. Div. 439, 462, 471, which case Jaggard cites to support his statement. The facts in that case were that defendants had been removing, over a period of years, minerals under lands adjacent to plaintiffs' farm. Defendants extended their mining operations across the boundary line and removed minerals owned by plaintiffs. Defendants also constructed and used roads and passages under plaintiffs' land for the transportation of ore mined by the defendants from their own land. Suit was brought for the value of the minerals taken from under plaintiffs' property and for compensation for the use of the roads and passages in transporting minerals of defendants across plaintiffs' property. One of the defendants died. The question involved was whether either of the causes of action survived against his estate. The court held that the defendant's estate was liable in the action for minerals taken on the ground that it had to that extent been enriched by the wrong, and the value of plaintiffs' land had been diminished proportionately.

On the question of recovery for the illegal use of roads and passages, the majority of the court held that the action did not survive because defendant's estate had not been enriched directly through the use of roads and passages over

plaintiffs' land. Plaintiffs contended that the defendants had been saved expense and inconvenience by using the roads and passages, but it was said that this did not deprive plaintiffs of anything nor did it enrich defendants. This decision was based on the interpretation of language used by Lord Mansfield in *Hambly* v. *Trott*, 1 Cowp. 371. Lord Justice Baggallay filed a strong dissent, in which he said that the language of Lord Mansfield and the opinions in former cases did not support the construction placed thereon by the court.

"Speaking with much diffidence, as my views in this respect differ from those of my colleagues, I feel bound to say that I cannot appreciate the reasons upon which it is insisted that although executors are bound to account for any accretions to the property of their testator derived directly from his wrongful act, they are not liable for the amount or value of any other benefit which may be derived by his estate from or by reason of such wrongful act. I can find nothing in the language used by Lord *Mansfield* that can support this view. On the contrary, when classifying the actions which survive against an executor by reason of the causes of action, he includes among such causes of action 'gain or acquisition by the testator, by the work and labour, or property of another,' and he in no respect limits or qualifies the nature or character of the 'gain' referred to. A gain or acquisition to the wrongdoer by the work and labour of another does not necessarily, if it does at all, imply a diminution of the property of such other person.

\* \* \*

" \* \* \* . Upon the question whether the wrongful act resulted in a benefit to the estate of the wrongdoer I think the proper inquiry is that suggested by Sir *Thomas Plumer*, 'Did the wrongdoer derive any benefit from the wrong done by him, or was it a naked injury by which his estate was in no way benefited?' My answer to that inquiry, as applied to the circumstances of the present case, is that the estate of the Defendant *R. Fothergill* was benefited by the

wrongful user by the Defendants of the roads and passages under the Plaintiffs' farm."

In the Notes on Restatement of Restitution by Warren A. Seavey and Austin W. Scott, pp. 193-4, this is said: "The reasons for denying an action of assumpsit against the trespasser for the value of land acquired by a trespass or for the value of its use are largely historical. * * * . Like many other rules originating at an early period, the reasons for its existence have largely disappeared but, except in a few jurisdictions, the rule remains."

The logic of the dissenting opinion in *Phillips* v. *Homfray*, *supra*, is irresistible. To hold that a trespasser who benefits himself by cutting and removing trees from another's land is liable on an implied contract, and that another trespasser who benefits himself by the illegal use of another's land is not liable on an implied contract is illogical. The only distinction is that in one case the benefit he received is the diminution of another's property. In the other case, he still receives the benefit but does not thereby diminish the value of the owner's proprty. In both cases, he has received substantial benefit by his own wrong. As the gist of the action is to prevent the unjust enrichment of a wrongdoer from the illegal use of another's property, such wrongdoer should be held on an implied promise in both cases.

The facts in *Edwards* v. *Lee*, 265 Ky. 418, 96 S. W. (2d) 1028, were that Edwards discovered a cave on the land belonging to himself and his wife, which he developed and advertised as the "Great Onyx Cave." Later, Lee, the owner of an adjoining tract, filed suit against Edwards and the heirs of his wife, claiming that a portion of the cave was under his land. He asked for an accounting of the profits which resulted from the operation of the cave and for an injunction prohibiting Edwards and his associates from further trespassing or using that part of the cave under his land. It was said that the action was based on repeated trespasses to land and that, although no damage or injury was shown to plaintiff's land, plaintiff was entitled to recover on the ground of an implied promise to pay. The

measure of recovery was fixed at one-third of the net profits inasmuch as one-third of the cave was under plaintiff's land. It was contended that the use of the cave by the trespasser did not damage or diminish Lee's property, but the court held that the gist of the action was the unjust enrichment of the wrongdoer, which would support an implied promise to pay.

In the Notes on Restatement of Restitution, *supra*, commenting on this case at p. 194, this is said: "The decision (*Edwards* v. *Lee*) is a welcomed departure from the result in *Phillips* v. *Homfray* (1883), 24 Chan. Div. 439, where recovery was denied against a person who had used a passageway under the plaintiff's land for the removal of coal."

The illegal transportation of the coal in question across plaintiff's land was intentional, deliberate and repeated from time to time for a period of years. Defendant had no moral or legal right to enrich itself by this illegal use of plaintiff's property. To limit plaintiff to the recovery of nominal damages for the repeated trespasses will enable defendant, as a trespasser, to obtain a more favorable position than a party contracting for the same right. Natural justice plainly requires the law to imply a promise to pay a fair value of the benefits received. Defendant's estate has been enhanced by just this much.* Pomeroy's Remedies and Remedial Rights, 2 Ed., pp. 630-635.

---

*Mr. Duncan McR. Cocke, in 22 Va. Law Review 683, at 688, in discussing this question, reaches the following conclusion: "In waiver of tort, the question is first, has defendant's act been tortious as to plaintiff. If so, a right of plaintiff's must necessarily have been invaded: Second, has defendant acquired a benefit by virtue of his wrongful act. Third, is plaintiff in equity and good conscience entitled to the benefit, or to state it in another fashion, is plaintiff's invaded right of such a nature that plaintiff is in justice entitled to all benefits accruing thereon. This necessarily means that the right must be capable of being dealt with contractually, as opposed to a right which, although if invaded may be compensated for in damages, in its unviolated state has no ascertainable value upon which a contract might be founded. It makes no difference that plaintiff's right still has all the value to him which it would have had, had not defendant violated it. The point is that plaintiff is exclusively entitled to benefits derived from or accruing on that right. Defendant now has a benefit which he derived by virtue of his violation of plaintiff's right."

See Keener on Quasi-Contracts, p. 159 *et seq.*; Clark on Contracts, 2 Ed., sec. 282.

The facts in *De Camp* v. *Bullard*, 159 N. Y. 450, 54 N. E. 26, were that plaintiff owned a tract of land in the Adirondack wilderness through which the north branch of the Moose river flows for 20 to 30 miles. The defendants had cut a large number of logs upstream from plaintiff's land under the belief that they had the right to float the logs down the river through plaintiff's land to a mill. Plaintiff obtained an injunction restraining defendants from entering his land and transporting the logs downstream. This judgment was suspended for a definite period upon condition that defendants execute a bond in the penalty of $5,000 with surety to indemnify plaintiff "against any and all loss or damage * * * sustained by the plaintiff" during the period that the injunction order was suspended. Defendants thereupon floated the logs downstream. Defendants refused to comply with the condition of the bond and an action was instituted thereon. Plaintiff, on the trial, admitted that the floating of the logs through his land did not injure or damage his realty but proved that the prevailing price for the floating of the logs, which measured two million feet when manufactured into lumber, was two cents a mile per thousand feet. The jury were told that plaintiff was entitled to a "fair compensation for the use of the river to float the 2,000,000 feet of logs." A verdict was rendered in favor of plaintiff for $500. In sustaining this verdict, the court said:

"The defendants insist that the measure of damages is not what the privilege of trespassing was worth to the trespassers, but what the plaintiff actually lost through interference with his business, loss of rent and the like. As there was no proof of actual loss of this character, they further insist that the plaintiff is entitled to nominal damages only. This position would place a premium on trespassing, because it makes the position of the trespasser more favorable than that of one lawfully contracting. If a man's house is vacant with no prospect of a tenant and no intention on his part of occupying it himself, and a trespasser occupies it, he must pay as damages for the trespass the value of the use and occupation, for this would be the duty of a tenant

contracting upon a *quantum meruit* for the use, by consent, of that which the trespasser uses without consent.

"In cases of involuntary trespass the damages are restricted as much as possible, but when the trespass is deliberate, intentional and continuous, they include, at least, the value of the use of the premises for the period that the owner is kept out of possession."

Plaintiff proved: (1) Ownership of the 100-acre tract, (2) the grant of an easement across the 100 acres for a limited purpose, and (3) the use of the easement over a period of years for a purpose not specified in the grant. He admitted that the illegal use caused no damage to the realty. Plaintiff, without attempting to prove any damage to the realty or the value of the benefits received by defendant, rested his case. Defendant's motion to strike the evidence was overruled, and it is from the testimony of its witnesses that the proof of the value of the benefit is ascertained.

While plaintiff offered no evidence to establish the value of the illegal use of the easement, we, as reasonable men, know that the transportation of 49,016 tons of coal over the tramroad across the plaintiff's land was a benefit to defendant. However, in the absence of proof of the value of the benefit, the court could enter no judgment for plaintiff. This proof is supplied by the testimony of the general manager on his cross-examination. The substance of his testimony on this point is that the prevailing rate of payment, or purchase of a right of way for transportation of coal across another's land, is one cent per ton, and that this purchase includes the right to construct and maintain a tramway for distances varying up to 2½ miles; but that, where the owner of the easement has already entered upon the land, and has constructed and is maintaining a tramroad for the transportation of coal from certain specified tracts, the purchase price should be much less—a small fraction of a cent per ton. The jury were instructed that they should fix the amount of damages, if any, at such as would fairly compensate plaintiff for the use and occupation of this strip

of land in the hauling and transportation of 49,016 tons of coal over the same.

While the evidence on the value of the benefits retained by defendant is not as clear and full as it could be, and perhaps should have been, the jury had all the facts and circumstances before it and evidently concluded that the value of the benefit to the defendant for the illegal use of the easement should be computed at one cent per ton. Viewing the case as a whole, we find no reversible error, and the judgment of the trial court is affirmed.

*Affirmed.*