WILLIAM S. STOKES, JR., INCORPORATED v. McKINLEY MATNEY.

December 1, 1952.

Record No. 4003.

Present, All the Justices.

The opinion states the case.

*Crockett & Gillespie* and *F. H. Combs,* for the appellant.

*Burns & Lively* and *G. R. C. Stuart,* for the appellee.

WHITTLE, J., delivered the opinion of the court.

William S. Stokes, Jr., Incorporated, filed a bill in equity in the Circuit Court of Buchanan county against McKinley Matney, seeking a mandatory injunction to compel Matney to remove an obstruction which he had placed across a road over which Stokes hauled coal from its mines to a tipple.

A temporary injunction was granted on April 19, 1951, requiring Matney to remove the obstruction. The injunction was to remain in force until July 1, 1951, unless sooner enlarged or dissolved. Matney filed a demurrer and answer to the bill, and afterwards an amended bill was filed by Stokes to which Matney filed a demurrer and answer.

The evidence was heard *ore tenus,* and on October 24, 1951,

the court entered a final decree dismissing the bill of complaint. For a review of this decree we granted Stokes an appeal.

Fullen Matney is the father of complainant, McKinley Matney, and both the complainant and respondent Stokes claim whatever rights they have through Fullen Matney.

Fullen Matney owned a tract of 172.2 acres of coal land on Dismal river in Buchanan county. On June 29, 1923, he conveyed the mineral rights in 160.84 acres of this land to C. L. Ritter Lumber Company, Inc., thus reserving from the 172.2 acres 11.36 acres, made up of two small tracts of 8.45 acres and 2.91 acres, respectively.

The deed to the Ritter Company under which it acquired the mining rights in the 160.84 acres contained certain rights and privileges which we will consider later.

Stokes claims under the deed dated June 29, 1923, as will be hereinafter shown, and McKinley Matney claims under two deeds from his father. Under the first deed, dated May 25, 1940, McKinley Matney acquired 5 acres lying within the 160.84-acre tract in which Ritter had acquired the mineral rights under the deed of June 29, 1923. Under the second deed, dated April 14, 1948, McKinley Matney acquired 2 acres, of which about 1½ acres is a part of the 8.45-acre tract excepted and reserved in the deed of June 29, 1923. This 1½ acres is owned by McKinley Matney in fee simple; the remaining ½ acre is embraced in the land in which the mining rights had been conveyed to Ritter.

There is a roadway extending 1000 feet through the Fullen Matney tract. Approximately 90 feet of this roadway extends over the 1½ acres owned by McKinley Matney in fee simple, and approximately 700 feet extends over the land owned by McKinley Matney which is subject to the mining rights in the deed to Ritter of June 29, 1923.

Stokes does not claim the right to use the roadway over the land owned by McKinley Matney in fee simple. It does, however, claim the right to use the roadway over the land which Ritter acquired from Fullen Matney under the deed of June 29, 1923, seven hundred odd feet of which extends over the land now owned by McKinley Matney which is subject to the rights acquired by Ritter under the aforesaid deed.

For many years the Ritter Lumber Company had been engaged in "blocking coal" in Buchanan county. This blocking process consists of acquiring leases or deeds to coal lands in

a particular section, thus permitting the lessee to "block up" sufficient compact boundaries of coal to make the mining thereof profitable.

In carrying out its "coal blocking" plan, the Ritter Company acquired quite a boundary of coal lands lying in the general vicinity of the Matney property. It acquired some of the coal lands as early as 1911.

On February 28, 1951, the Ritter Company leased unto William S. Stokes, Jr., Inc., eleven tracts of coal land which it had thus acquired. The effect of this lease was to permit the Stokes Company to mine the coal on the eleven tracts under certain conditions and for a specified royalty or compensation not important to this litigation. The Matney coal land was not included in this lease.

In addition to the coal rights acquired by Stokes from Ritter in the lease above referred to, the Stokes Company owned other valuable coal rights in lands which had not been acquired from Ritter, among which were the Slocum and the Kroll tracts. The right to haul the coal from these two tracts over the roadway across the Matney land is the question here involved.

As hereinbefore stated, the Ritter Company, by deed dated June 29, 1923, acquired the coal under the Matney land, with certain rights and privileges over same. After the Ritter Company leased the coal rights in the eleven tracts of land to Stokes on February 28, 1951, Stokes undertook to move the coal mined from the Slocum and Kroll tracts over the Matney land. The question of Stokes' right to do this was challenged and Ritter then undertook, by a contract dated March 20, 1951, to grant unto the Stokes Company an easement giving it this right.

The contract purported to "grant unto Stokes the right to move and transport over, upon and across the land hereinafter referred to and identified, any and all coal mined or removed by Stokes from, on or under lands described in said lease of February 28, 1951, *and any other lands whatsoever in Buchanan county,* Virginia. The lands above referred to over which said right of way is granted are mentioned and described in a certain deed dated June 29, 1923, made by Fullen Matney and Nancy Matney, his wife, to Ritter, * * *. It is further understood and agreed by and between the parties hereto *that Ritter does not by this deed undertake to grant to Stokes any rights or*

*easements that Ritter does not have the right or power to grant by virtue of said deed of June 29, 1923.* * * * " (Italics supplied.)

The Stokes Company contends that by virtue of this easement contract from Ritter, it acquired the right and privilege of hauling coal from the Kroll and Slocum lands over the Matney tract notwithstanding the fact that Ritter never owned or controlled the coal in these two tracts. McKinley Matney denies that Stokes has any such right.

This brings us to a consideration of the provisions of the deed from Fullen Matney to the Ritter Company of June 29, 1923, which was essentially a coal mining deed under which Ritter acquired the coal and other minerals in the 160.84-acre tract. The mining rights acquired under the deed were broad in scope and included "the right to remove over, upon and under said land * * * the said coal and other substances above enumerated, * * * from on and under adjacent, coterminous, neighboring and any other lands; and the right * * * to use * * * the surface * * * to make and erect * * roads, tramroads * * * for the mining, manufacturing and removing of said coal and other substances above enumerated * * * from, on or under said tract of land, and from, on or under adjacent, coterminous, neighboring and any other lands; * * * and the right to use the above mentioned railroads and other ways * * * for the purpose of transporting any materials, traffic or freight, whether used in connection with the mining and manufacturing herein contemplated or not. * * *""

There appears, near the end of the deed, a provision which reads: "All the rights, rights of way, privileges and easements herein mentioned shall forever run with and be appurtenant to any and all the coal and other substances above enumerated, in, on or under the tract of land herein described, and in, on and under any other lands now owned or hereafter acquired by the party of the second part, its successors or assigns."

▮ The easement thus granted was a pure easement, *i.e.,* an easement wherein there was a servient estate (the Matney 160.84-acre tract), and a dominant estate which included all blocked coal lands that the grantee Ritter owned. Under the easement a servitude was imposed upon the Matney land. It was made servient by the grant and a benefit was granted to and for other tracts owned by the grantee Ritter, which tracts

constitute the dominant estate. 6 M. J., Easements, § 3, pages 468, 469.

■ A definite distinction is made between this character of easement which has both a servient and a dominant estate, and an easement in gross wherein there exists a servient estate but no dominant estate, and in which the servitude is imposed upon real estate with the benefit of the servitude running to an individual and not to a dominant estate. 6 M. J., Easements, § 5, page 470.

The deed provides that the easement is "appurtenant to any and all the coal * * * in, on or under the tract of land herein described (the 160.84-acre tract), and in, on and under any other lands now owned or hereafter acquired by the party of the second part (Ritter), its successors or assigns."

■ Stokes is not a *successor or assign* of Ritter to the coal on the Matney 160.84-acre tract. The easement is appurtenant to the coal on the Matney tract and to coal lands owned by Ritter or thereafter acquired by Ritter or by Ritter's successors or assigns in title. The easement is not appurtenant to the Slocum and Kroll tracts.

■ "An easement appurtenant to land cannot be converted into an easement in gross by an attempted separation of the ownership of the easement and of the dominant tenement, as by a conveyance of the dominant estate the owner reserving or excepting the easement or vice versa. Such an attempt avails nothing; the easement notwithstanding continues to adhere to the dominant estate to which it is appurtenant and passes with it to the grantee thereof, though not specifically mentioned. Once appurtenant it is always appurtenant." Minor on Real Property (2nd Ed.), page 124.

"An appurtenant easement cannot be conveyed, by the party entitled thereto, separate from the land to which it is appurtenant. It can be conveyed only by the conveyance of such land. It inheres in the land and cannot exist separate from it. It cannot be converted into an easement in gross." Jones on Easements, Sec. 28.

"A pure easement can exist only as an appurtenance to land and it follows that an existing easement cannot be severed from the land to which it is appurtenant and made the subject of a separate grant or reservation. Such easements cannot be converted into easements in gross." 19 C. J., page 938. See also

17 Am. Jur., Easements, § 125, pp. 1013, 1014; Jones on Easements, Sec. 360; *Gish* v. *Roanoke,* 119 Va. 519, 532, 89 S. E. 970; 28 C. J. S., Easements, § 45, page 708; 1 Minor on Real Property (1st Ed.), page 117.

As stated by the able trial judge, ''The easement, by the clearest of language, is made appurtenant to *coal* on lands *owned* by C. L. Ritter Lumber Company, or *coal* on lands thereafter acquired by said company, and *coal* on lands acquired by succession or assignment from C. L. Ritter Lumber Company.''

The limit to which this easement could extend would be to coal lands acquired by Stokes from Ritter or from Ritter's successors or assigns in title. The Ritter coal lands acquired by Stokes would then be the dominant estate, and the 160.84-acre tract owned by Matney the servient estate.

The Ritter Company cannot impose upon the 160.84-acre Matney tract the servitude of coal lands acquired by Stokes from parties other than Ritter or parties not claiming under Ritter. If this is permitted then coal lands owned by Stokes and not acquired from Ritter become the dominant estate enjoying the servitude imposed upon the Matney land. Thus the servitude of the easement on the Matney land could be enlarged for the benefit of lands acquired by Stokes from anyone.

The words ''successors or assigns'' employed in the deed from Matney to Ritter of June 29, 1923, are limited to those who are the actual successors or assigns of the dominant estate (coal lands owned by Ritter). The Ritter Company, as grantee of this easement from Matney, is not authorized to include and create a dominant estate in land which it has never owned. Certainly Fullen Matney never intended to create an easement of such latitude, and the wording of the easement contract of March 20, 1951, would indicate that the Ritter Company doubted that it had any such right.

Other defenses are asserted by McKinley Matney which we are not called upon to decide in view of the result herein reached.

We are of the opinion that the decree appealed from is plainly right and the same is therefore

*Affirmed.*