## Richmond

PRESTON MINING COMPANY, A CORPORATION v. McKINLEY MATNEY.

November 28, 1955.

Record No. 4399.

Present, All the Justices.

The opinion states the case.

*Combs, Combs & Street* and *Crockett & Gillespie*, for the plaintiff in error.

*George C. Sutherland* and *Burns & Lively*, for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

This appeal is a sequel to that involved in *William S. Stokes, Jr., Inc. v. Matney*, 194 Va. 339, 73 S. E. (2d) 269. In that case we affirmed a decree of the lower court which held that William S. Stokes, Jr., Inc., did not have the right to haul its coal, machinery

and supplies over a private road which led across the land of Mc-Kinley Matney.

The present action at law was brought by Matney against Stokes, whose name had been changed to Preston Mining Company, to recover the sum of $15,000 alleged to be due for the use and occupancy of the plaintiff's land in hauling coal and supplies over this road. This latter proceeding resulted in a verdict and judgment of $4,756.50 in favor of Matney, and the matter is again before us on a writ of error to that judgment.

The facts pertinent to the present action are interwoven with those in the former suit. Prior to 1951, McKinley Matney had acquired from his father, Fullen Matney, the fee-simple title to a tract of two acres of land and the surface rights in an adjoining tract of five acres lying on Long Fork and Cross Fork branches of Dismal River in Buchanan county, Virginia. William S. Stokes, Jr., Inc., owned the mineral rights in certain lands known as the Slocum and Kroll tracts to the north of McKinley Matney's land.

On February 1, 1951, Stokes began mining its coal on the Slocum and Kroll tracts and hauling it and its machinery and equipment over a private road which ran southwardly about 750 feet across Matney's land to a public road. Several years previously Badger Coal Company, which was then engaged in removing coal from the Slocum and Kroll tracts, had made similar use of this private road. What arrangement, if any, Badger made with Matney for the use of this road is not shown by the record. At any rate, Matney promptly challenged the right of Stokes to use the road without his consent and without paying him for the privilege. Stokes insisted that by virtue of its contract with C. L. Ritter Lumber Company which owned the mineral rights under Matney's five-acre tract, it had the right to use that portion of the road which ran across this tract. Nevertheless, it undertook to reach an agreement with Matney as to what compensation it would pay him for the privilege of using the road. These efforts, however, were unsuccessful and in the latter part of February Matney put a chain across the road.

On April 19, 1951, Stokes filed its bill against Matney seeking a mandatory injunction to compel him to remove the obstruction from the road and to restrain him from interfering with its (Stokes') right to use the road. In accordance with the prayer of the bill there was a decree for a temporary injunction to remain in effect until July 1, unless sooner enlarged or dissolved. The injunction was to become

effective upon the execution by Stokes, or someone for it, of the usual bond conditioned to pay all costs and such damages as might be incurred in case the injunction should be dissolved. Code, § 8-623.

On the day following the entry of this decree the parties entered into this written agreement:

"THIS AGREEMENT MADE AND ENTERED INTO THIS the 20th day of April, 1951, by and between McKinley Matney, party of the first part, and William S. Stokes, Jr., Inc., its successors and assigns, party of the second part:

"WITNESSETH, That whereas, on the application of the said second part, the Circuit Court of Buchanan County, Virginia, has granted a temporary injunction permitting it to construct and use a road for hauling coal and supplies to its mine, over that part of the tract of land conveyed to the said first party by Fullen Matney, under which Fullen Matney sold the coal to C. L. Ritter Lumber Company, Incorporated, until the 1st day of July, 1951, unless sooner dissolved, enlarged or perpetuated;

"Whereas, there is now constructed and in use a road over the said first party's land, part of which is on land owned in fee by said first party and part of which is on land which the coal was sold to C. L. Ritter Lumber Company, Incorporated;

"The said first party agrees that the said second part may use the road already on said land in lieu of constructing the road over and on the land on which the coal is sold;

"Now, THEREFORE, this agreement in consideration of the premises, and the undertakings hereinafter set out, that said first party hereby grants to the said second party the right to use the road now built over his land to haul and transport coal, and any and all products and supplies for mining the said coal, and any and all machinery used in that connection, till the 1st day of July, 1951.

"In the event said temporary injunction is perpetuated, then this use of the said road is not to cost the said second party anything, and is free, but in the event said injunction is dissolved, then the use of said road is to be considered as damages caused by granting of the said temporary injunction and settled for and paid for by the said second party, as such."

It further appears that this agreement was extended for the pendency of that suit by a verbal understanding between the parties.

Pursuant to these agreements Stokes continued to use the road until about October 15, 1951.

On October 24 the trial court entered a final decree dissolving the temporary injunction and dismissing the bill, the effect of which was to hold that Stokes did not have the right to use the road without Matney's consent. On appeal we affirmed that decree. *William S. Stokes, Jr., Inc.* v. *Matney, supra.*

The parties were unable to agree on the compensation due for the use of the road and the present action at law was instituted. The motion for judgment is an action *ex contractu.* It alleges that the defendant "wrongfully entered onto" the plaintiff's land "and with trucks and other machinery, hauled and moved across and over said tract of land large quantities of coal * * * bulldozers, tractors, other machinery and supplies," and that "in consideration of said use and occupancy of said land," the defendant "undertook and faithfully promised and agreed to pay" the plaintiff the sum of $15,000. The duration of the use and occupancy was not alleged, but the undisputed evidence is that it was from February 1 to October 15, 1951.

Since, as has been said, the effect of the final decree entered in the equity suit was to hold that the Mining Company had no right to use the road across the Matney property without his consent and without paying him therefor, the only issue in the present suit was what amount the plaintiff, Matney, was entitled to recover of the defendant Mining Company for such use.

At the trial the plaintiff insisted that under the principles laid down in *Raven Red Ash Coal Co.* v. *Ball,* 185 Va. 534, 39 S. E. (2d) 231, 167 A. L. R. 785, the measure of his recovery was the fair and reasonable value of the benefits received by the defendant by reason of its use of the road. He offered evidence which showed, or tended to show, that such fair and reasonable value of the benefits to the defendant was 15¢ for each ton of coal hauled. A witness for the plaintiff estimated that 62,500 tons of coal had been removed from the mine. But what portion of this was before and after the execution of the contract of April 20, 1951, or what part was carried by this defendant across the plaintiff's land, is not shown.

The records of the defendant Mining Company showed that during the period from February 1 to October 15, 1951, it hauled over the road a total of 31,710 tons of coal. Of this amount 2,795 tons were hauled before April 30, and 28,915 tons were hauled thereafter, or after the execution of the contract of April 20 giving the

Mining Company the right to use the road. There was evidence on behalf of the defendant that the haulage rates over the road were worth from one to two cents per ton, or a flat sum of $150 per year.

At the conclusion of the evidence the trial court took the view that the plaintiff's measure of recovery was controlled by the principles laid down in *Raven Red Ash Coal Co.* v. *Ball, supra,* and so instructed the jury in Instruction 2-P which read thus:

"The court instructs the jury that the plaintiff is entitled to recover such amount, if any, as shown by a preponderance of the evidence, will be the fair and reasonable value of the benefits received by said William S. Stokes, Jr., Incorporated, by reason of its hauling and transporting its coal from the Slocum and Kroll lands over plaintiff's lands, during the period from the —— day of February, 1951, until the 24th day of October, 1951."

In *Raven Red Ash Coal Co.* v. *Ball, supra,* we held that a defendant who had intentionally and deliberately transported coal over the land of the plaintiff without his consent for a number of years was a trespasser, and that there was an implied promise by him to pay the plaintiff the "fair value of the benefits received" by him, the defendant, for the use and occupancy of the land, for which an action in assumpsit would lie. This was based upon the principle of unjust enrichment—that is, that the "defendant had no moral or legal right to enrich itself by this illegal use of plaintiff's property." (185 Va., at page 548, 39 S. E. (2d), at page 238.)

The defendant objected that the principles laid down in *Raven Red Ash Coal Co.* v. *Ball, supra,* and embodied in the instruction, did not apply to the present case for two reasons: First, it said, unlike the defendant in that case, the defendant here had used the road "innocently and in good faith" and "under an honest belief that it had the lawful and legal right to do so;" and second, it said, the measure of the plaintiff's recovery in the present case was controlled by the contract of April 20, 1951, which in express terms gave the defendant the right to use the road and provided for the compensation to be paid therefor.

We need not stop to consider whether the defendant's first ground of objection is well taken. In our opinion, the second position is sound and points to the court's error in granting this instruction.

While the evidence shows that at first the defendant's use of the road across the plaintiff's land was illegal and without his consent, the written contract in express terms gave the defendant the right to

use the road. Consequently, its use of the road ceased to be a trespass and was an occupancy by consent. Although the contract in terms gave the defendant the right to use the road "till the 1st day of July, 1951," it appears from the joint affidavit of counsel for both parties that thereafter the parties "agreed with each other that the said company might continue transporting its coal over said land claimed by McKinley Matney, after the expiration of the temporary injunction granted by the court, which expired July 1, 1951, and that both sides would meet and try to come to an agreement and settlement of the differences between them."

Moreover, the contract provided for the compensation to be paid by the defendant for the use of the road. It said: "In the event said temporary injunction is perpetuated, then this use of the said road is not to cost the second party [Stokes] anything." Since that eventuality did not occur the defendant was not entitled to use the road without paying therefor. Hence, the alternate provision became operative. It read, "but in the event said injunction is dissolved, then the use of said road is to be considered as damages caused by granting of the said temporary injunction and settled for and paid for by the said second party, as such."

Apparently the trial court took the view that after the injunction had been dissolved, despite the terms of the contract the status of the defendant in using the road was that of a trespasser, which entitled the plaintiff to recover of the defendant the fair and reasonable value of the benefits received by the defendant from the use of the road, under the principles laid down in *Raven Red Ash Coal Co.* v. *Ball, supra.*

Certainly the defendant was not a trespasser after the execution of the contract which in express terms gave it the right to use the road. Thereafter, or for the greater portion of the time during which the defendant used the road, it was an occupant by consent.

Furthermore, we think it was the plain intent of the contract that the use of the road, both before and after the date of the execution of the contract, was to have the same status—that is, the use for the whole period was to be treated as if it had been with the consent of the plaintiff. The contract provided that should the injunction be dissolved, "then the use of said road," that is, the use for the whole period, was "to be considered as damages caused by granting of the said temporary injunction and settled for and paid for * * * as such."

We do not agree with the contention of the defendant that the

language, that the use of the road was to be considered as "damages," was intended to limit the plaintiff's amount of recovery to the actual damage done to his property. We think it was the intent of the contract that the defendant should pay the plaintiff the fair and reasonable value of the use of the road, in the same manner and to the same extent that it would pay him damages recoverable under the bond. Compensation for the use of the road for the period was "to be considered as damages," that is, compensation of which the plaintiff had been deprived by reason of the injunction, and paid for "as such."

Where use and occupation are based on an express contract which does not amount to a formal lease, the owner of the land may recover the fair and reasonable value of such use and occupation. 91 C. J. S., Use and Occupation, § 1, p. 522; *Id.*, § 15, p. 545; *Eppes' Ex'rs* v. *Cole*, 4 Hen. & M. (14 Va.) 161, 4 Am. Dec. 512; *Sutton* v. *Mandeville*, 1 Munf. (15 Va.) 407, 4 Am. Dec. 549; 4 Minor's Institutes, 3d Ed., p. 164. These principles apply in the present action to recover for the use and occupation of the road across the plaintiff's property.

The measure of the fair value of such use is to be determined from evidence of the nature and condition of the road, its use and fitness for such use by the defendant, the benefits derived by it from such use, the damage, if any, to plaintiff's property, and the amount of compensation usually paid for similar use of similar roads in the same neighborhood or community. 91 C. J. S., Use and Occupation, § 15, pp. 545-6. The jury should have been instructed accordingly.

The judgment is reversed, the verdict set aside, and the case remanded for a new trial in accordance with the principles here stated.

*Reversed and remanded.*