## CIRCUIT COURT OF FAIRFAX COUNTY

Jan M. Lodal
and Elizabeth Lodal

 v.

Verizon Virginia, Inc.,
and Dennis Owens

August 22, 2007

Case No. CL-2007-2178

BY JUDGE JONATHAN C. THACHER

 This matter is before the Court on Defendants' Demurrer to Counts II through IV of the Plaintiffs' Amended Complaint. Plaintiffs Jan and Elizabeth Lodal filed suit against Verizon Virginia, Inc. ("Verizon") and Verizon employee Dennis Owens on four counts: I: Trespass, II: Slander of Title, III: Fraud, and IV: Unjust Enrichment. Defendants filed a demurrer as to Counts II: Slander of Title, III: Fraud, and IV: Unjust Enrichment. After considering the briefs and hearing arguments as to the demurrer to Counts II, III, and IV, the Court reaches the conclusions and opinion below.

### Background

 This case arises from Defendant Verizon Virginia, Inc.'s use of a utility easement over Plaintiffs Jan and Elizabeth Lodal's real property in McLean.

 In 1992, the owners of real property, referred to as "Lot 3," granted a thirty-foot wide public utility easement over Lot 3 for the benefit of an adjacent parcel, "Lot 4." (Am. Compl. at ¶ 5.) The easement grants "permission to all public utilities serving the lot benefited by this easement a

right of entry over and across the easement area for the purpose of installation, operation, and maintenance of public utilities serving such lot." (*Id.* at ¶ 6.)

Sometime in the 1990s, Verizon laid copper wires "over or near the utility easement over Lot 3 for the purpose of providing telephone service, and ultimately DSL service, to Lot 4." (*Id.* at ¶ 7.) In 1996, the Lodals purchased Lot 3. Dr. Gustavo Rossi, a Verizon phone and DSL customer, owns Lot 4.

In 2004 or 2005, Verizon "made improvements in its telephone service to Lot 4" by laying fiber optic cable over or near the easement. (*Id.* at 8.) The Lodals did not know about the fiber optic cable until 2006. (*Id.*) Sometime after August 2006, Verizon entered Lot 3 and began "excavation and other work" to install a new fiber optic cable. (Am. Compl. at ¶ 8.) The Lodals ejected Verizon's workers from Lot 3 when they failed to provide proof of a valid easement to install fiber optic cables. A Verizon supervisor subsequently provided "an unreadable document, and then an irrelevant document"; according to the Plaintiffs, neither document provided proof of an easement. (*Id.*)

Verizon subsequently ignored the Lodals' instruction not to enter Lot 3 without proof of a valid easement. While the Lodals were out of town, Verizon workers dug a trench, laid new fiber optic cable, and marked a Lot 3 roadway with paint. Verizon subsequently entered Lot 3 at least twice more without the Lodals' knowledge and in contravention of the Lodals' express direction to stay off of Lot 3 pending resolution of the parties' dispute regarding the easement.

The Lodals filed the instant lawsuit on February 26, 2007, and filed an Amended Complaint on March 30, 2007. The Amended Complaint comprises four counts: Trespass (Count I), Slander of Title (Count II), Fraud (Count III), and Unjust Enrichment (Count IV). In Count II, the Lodals allege that Verizon slandered the Lodals' title by "publish[ing] statements to the Lodals, Dr. Rossi, and others, that Verizon has rights to the Lodals' property, including a utility easement for fiber optic cable on Lot 3, are false and were made with the intent to harm the Lodals' valuable interest in their property." (Am. Compl. at ¶ 19.)

In Count III, the Lodals allege that Verizon falsely represented to the Lodals that Verizon "would not trespass upon the Lodals' property, that it would provide proof that it had an appropriate easement, and that it would repair any damage it did." (*Id.* at ¶ 22.) The Lodals contend that they relied upon Verizon's misrepresentations in "not erecting barriers to Verizon's entry upon Lot 3." (*Id.*)

In Count IV, the Lodals allege that Verizon received a substantial economic benefit from supplying phone and DSL service to Lot 4 by "using fiber optic cable illegitimately and intentionally trespassing on Lot 3." (*Id.* at ¶ 27.) Accordingly, the Lodals ask this Court to compel Verizon to disgorge the profits from the cable at issue.

The Court will address each of these issues in turn.

## Analysis

### Standard of Review

A demurrer admits the truth of all material facts properly pleaded including those facts expressly alleged, those which fairly can be viewed as impliedly alleged, and those facts fairly and justly inferred from the pleading. *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24, 431 S.E.2d 277, 278 (1993). A complaint need not descend into statements giving details of proof; rather a complaint that contains sufficient allegations of material facts to inform the defendant of the nature and character of the claim is sufficient to withstand demurrer. *Id.* at 24, 431 S.E.2d at 279. As Virginia is a notice pleading state, even a flawed complaint will survive demurrer if it is drafted so that the defendant is on notice of the nature and character of the claim. *Id.*

### Count II: Slander of Title

In Count II, the Lodals allege that Verizon intentionally published statements to the Lodals, Dr. Rossi, and others, which have slandered the title to their land.

An action for slander of title requires "(1) the uttering and publication of the slanderous words by the defendant, (2) the falsity of the words, (3) malice, (4) and special damages." *Bison Bldg. Co., L.L.C. v. Brown*, 70 Va. Cir. 348, 355 (Fairfax 2006) (Vieregg, J.) (quoting 50 Am. Jur. 2d, § 550 (2006)). "The action is not for the words spoken, but for the special damages for the loss sustained by reason of the speaking and publication of the slander." *Id.* Though he lacked evidence to support his claim at trial, the plaintiff in *Bison Bldg. Co.* properly pleaded special damages by alleging that he lost contracts because of the defendant's statements. *Id.*

In an action for slander of title, the plaintiff "must show that the defendants acted with malice or in reckless disregard of the truth or falsity of the statement. . . ." *Wright v. Castles*, 232 Va. 218, 224, 349 S.E.2d 125, 129 (1986). Malice is typically defined as a sinister or corrupt motive such as

hatred, revenge, personal spite, ill will, or a desire to injure the plaintiff. *Bison*, 70 Va. Cir. at 355. Absent such motivations, communications made with such gross indifference and recklessness as to amount to a wanton or willful disregard of the plaintiff's rights may also constitute malice. *Id.*

Plaintiffs in this case allege that Verizon published false statements to Dr. Rossi and others with reckless disregard as to whether they were accurate. Defendants contend that this case involves nothing more than a good faith dispute over whether or not there is a valid easement over the Lodals' property. However, for the purposes of a demurrer, the Court must consider the plaintiffs' allegations as true. *CaterCorp*, 246 Va. at 24, 431 S.E.2d at 278. Here, the Lodals allege that the defendants intended to harm the Lodals and acted in a manner that was reckless. (Am. Compl. at ¶ 19.) Proving that intent and the manner in which the defendant acted is the plaintiffs' burden at trial, not upon demurrer; therefore, with regards to the malice issue, the plaintiffs have satisfied their burden at this stage.

However, an action for slander of title also requires an allegation of special damages. The Lodals contend that they "are entitled to an order . . . enjoining Verizon from representing that it has any rights with respect to the Lodals' property except for copper wires completely within the existing utility easement, and to damages resulting from such slander of title." (Am. Compl. at ¶ 20.) In the Amended Complaint's Prayer for Relief, the Lodals' only prayer for specific sums relate to physical damage to Lot 3 and "exemplary or punitive damages." (*Id.* at 9-10.) Here, unlike in *Bison*, where the plaintiff pleaded that the published words resulted in lost contracts, the Lodals only express presumed damages to the marketable value of lot 3 and fail to indicate any such special damages that flow from the words uttered by the Defendants. Thus, as the Amended Complaint fails to properly allege the essential elements of a slander of title claim, the demurrer to Count II is sustained with leave to amend.

### Count III: Fraud

In Count III, the Lodals contend that Verizon fraudulently misled them to believe they would not enter Lot 3 without first providing a valid utility easement. (Am. Compl. at ¶ 22.) The Lodals claim they relied on such assurances and consequentially failed to erect barriers to Verizon's access to Lot 3. (*Id.*) Plaintiffs allege actual fraud, but, in the alternative, that Verizon misled them through constructive fraud.

The elements of actual fraud are: "(1) A false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Richmond Metro. Auth. v. McDevitt*, 256 Va. 553, 557-58, 507 S.E.2d 344, 346 (1998).

Constructive fraud requires "that a false representation of a material fact was made innocently or negligently, and the injured party was damaged as a result of . . . reliance upon the misrepresentation." *Id.* Additionally, constructive fraud requires clear and convincing evidence that the defendant "represented as true what is really false, in such a way as to induce a reasonable person to believe it, with the intent that the person will act upon the representation." *Mortarino v. Consultant Engineering Services, Inc.*, 251, Va. 289, 295, 467 S.E.2d 778, 782 (1996) (quoting *Evaluation Research Corp. v. Alequin*, 247 Va. 143, 148, 429 S.E.2d 387, 390 (1994)).

"Where fraud is relied on, the [pleading] must show specifically in what the fraud consists, so that the defendant may have the opportunity of shaping his defense accordingly, and since [fraud] must be clearly proved it must be distinctly stated." *Mortarino*, 251 Va. at 295, 467 S.E.2d at 782 (quoting *Alsop v. Catlett*, 97 Va. 364, 370, 34 S.E. 48, 50 (1899).) In *Mortarino*, the Court sustained the demurrer because Mortarino failed to plead his fraud claim to the "requisite degree of particularity." *Id.* In particular, Mortarino failed to plead that the defendant knew that he would rely upon the alleged misrepresentations. *Id.*

The Lodals allege that Verizon falsely represented that they would not enter Lot 3 without first presenting a valid utility easement. (Am. Compl. at ¶ 22.) Plaintiffs also argue that Verizon intentionally and knowingly misled them to let their guard down and that they would have built a barrier to prevent Verizon's access to Lot 3 but for the misleading statements. (*Id.* at ¶¶ 22-23.) Plaintiffs highlight the fact that Defendant produced invalid paperwork to convince the Lodals that there was a valid easement and, upon failure to do so, subsequently stated they would not re-enter Lot 3 until there was finality over the easement dispute. (*Id.* at ¶¶ 22-24.) Plaintiffs additionally plead that Defendants knew they were misleading the Lodals as evidenced from Defendant's covert trespassing and construction on Lot 3 while the Lodals were away. (*Id.* at ¶ 23.) Distinguished from *Mortarino*, the pleadings specifically allege that Verizon knowingly and intentionally coaxed the Plaintiffs so that they would not take preventive measures. In addressing a motion for demurrer, the Court may accept the Plaintiff's pleadings as true and may make reasonable inferences from the facts alleged. *CaterCorp*, 246 Va. at 24, 431 S.E.2d at 278.

Defendant argues that the act of the Lodals not constructing barriers is unreasonable reliance since it is unlawful to block a valid easement and cites *Stephen Putney Shoe Co. v. Richmond etc. RR.*, 116 Va. 211, 81 S.E. 93 (1914), for that proposition.

The Plaintiffs' Amended Complaint admits that there is a valid utility easement over Lot 3 that grants "permission to all public utilities serving the lot benefited by this easement a right of entry over and across the easement area for the purpose of installation, operation, and maintenance of public utilities serving such lot." (Am. Compl. at ¶ 6.) However, only permanent structures blocking a valid easement are considered automatically unlawful. *Ortiz v. Flattery*, 63 Va. Cir. 309, 313, LEXIS 200 *9-10 (McWeeny, J. 2003.) "But when a structure is lawful, as when erected on the defendant's own premises . . . then the cause of action arises only for such injury as may result from the use of the structure." *Id.* The Court may infer that the Lodals could have lawfully erected a barrier to block Verizon's access to Lot 3 that did not offend the reasoning.

The Defendants' Demurrer to Count III is overruled.

### Count IV: Unjust Enrichment

In Count IV, Plaintiffs allege that Verizon derived a substantial economic benefit by providing Lot 4 with phone and DSL service in the course of trespassing and running cable on Lot 3. The Lodals ask the court to disgorge Verizon's profits that resulted from the trespass.

To recover under a theory of unjust enrichment, the plaintiff must establish a quasi-contract by demonstrating "(1) a benefit conferred on the defendant by the plaintiff; (2) knowledge on the part of the defendant of the conferring of the benefit; and (3) acceptance or retention of the benefit by the defendant in circumstances that render it inequitable for the defendant to retain without paying for its value." *Nossen v. Hoy*, 750 F. Supp. 740, 745, LEXIS 15508 *12 (E.D. Va. 1990). In an action for unjust enrichment for the use and occupation of realty, a defendant may be liable for the "fair value of the benefits received" by the defendant as a result of his illegal use of the plaintiff's property. *Raven Red Ash Coal Co. v. Ball*, 185 Va. 534, 548, 39 S.E.2d 231, 238 (1946).

In *Raven Red Ash*, the defendant had intentionally and deliberately transported coal over the land of the plaintiff without his consent for a number of years. *Id.* at 537-38, 39 S.E. 2d at 232-34. The Court found that there was an implied promise by the defendant to pay the plaintiff the "fair value of the benefits received" by the defendant as a result of his illegal use of the

plaintiff's property. *Id.* at 548, 39 S.E.2d at 238. In analyzing the appropriate measure of damages the Court noted that the "defendant had no moral or legal right to enrich itself by this illegal use of plaintiff's property" and that the reasonable damages owed to the plaintiff was the prevailing rate of payment for the purchase of a right of way for transportation of coal across another's land that would "fairly compensate plaintiff for the use and occupation" of his land. *Id.* at 548-51, 39 S.E.2d at 239.

Here, in addition to asking for monetary damages sufficient to restore those portions of Lot 3 physically damaged by the defendants, the Lodals are asking for the disgorgement of profits that Verizon received as a result of its trespass upon Lot 3. *Raven Red Ash* stands for the proposition that a plaintiff may be entitled to recovery of fair compensation for the defendant's illegal use and occupation of his land, which is not the same measure of recovery as a complete disgorgement of the defendant's profit. *Id.*

The Lodals, as requested in the Amended Complaint, are not entitled to a portion of the profits Verizon earned by delivering communication services to Lot 4 by allegedly trespassing Lot 3. Under an implied contract theory, the Lodals are not entitled to anything more than the fair value of a comparable easement.

Verizon's Demurrer as to Count IV is sustained with leave to amend.

## Conclusion

Defendants' demurrer to Counts II: Slander of Title and IV: Unjust Enrichment are sustained. Plaintiff is granted twenty-one days from the date of entry of the accompanying Order in which to amend their pleading on these two counts. The Defendants' demurrer to Count III: Fraud is overruled.