DINING CAR EMPLOYEES LOCAL NO. 385, Plaintiff-Appellant,

v.

CHICAGO, MILWAUKEE, ST. PAUL AND PACIFIC RAILROAD COMPANY, a Wisconsin corporation, Defendant-Appellee.

No. 14081.

United States Court of Appeals Seventh Circuit.

Oct. 1, 1963.

Arthur S. Gomberg, Samuel Nineberg, Chicago, Ill., for appellant.

Edwin J. Richardson, James P. Reedy, Chicago, Ill., for appellee.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and CASTLE, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Dining Car Employees Local No. 385, plaintiff, brought a diversity action in the district court against Chicago, Milwaukee, St. Paul and Pacific Railroad Company, a Wisconsin corporation, for declaratory judgment, an injunction and other relief. The district court, on motion of defendant, dismissed the action, and plaintiff appeals.

The facts which we now set forth we take from the complaint.

Plaintiff is a labor organization, certified under the Railway Labor Act to represent operating employees of the defendant railroad company employed as

dining car employees, and sues in a representative capacity for and on behalf of all of the members of said labor organization who have a vital interest in this cause of action and are greatly affected and concerned therein. Defendant is a railroad company engaged in the business of interstate carrying of freight and passengers, and employs members of plaintiff's labor organization as operating employees.

Plaintiff entered into an agreement with defendant, effective October 30, 1955, for the employment by defendant of the members of plaintiff's labor organization as cooks, waiters and buffet attendants on various trains of defendant railroad company and other railroad companies.

This agreement contemplated a certain number of crews to be employed by defendant on its train, the "City of San Francisco", running from Chicago to Oakland, California, over three separate railroad lines, including defendant's line from Chicago to Omaha, Nebraska. The members of plaintiff are employed on that portion of the trip lying between Chicago and Omaha and, based upon the mileage of the entire trip, the Chicago to Omaha distance is 21.63% of the total distance, which, according to plaintiff, entitled it to 10¾ cooks, 14¼ waiters and 3 buffet attendants.

The complaint in Count II claims that actually the dining car employees represented by plaintiff "are entitled to and should receive in the future a 21.63% of the total dining car jobs over the Interline road hereinabove described, and that defendant shall employ from the membership of plaintiff's labor organization ten and three-quarter cooks, fourteen and one-quarter waiters and three buffet attendants henceforth, and for such other and further relief by way of injunction or otherwise," while in Count I it avers that "defendant has failed and refused to provide the aforesaid number of dining car employment to plaintiff and its members, and have instead employed eight (8) cooks, twelve (12) waiters and two (2) buffet attendants," whereby

"plaintiff's labor organization for and on behalf of its members and employees of defendant railroad company have been deprived of salaries in the aggregate sum of $114,400." and as the representative of members of its labor organization as a class, prays judgment for $114,400.

1. In establishing the National Railroad Adjustment Board, Congress provided in 45 U.S.C.A. § 153 First:

"(i) The disputes between an employee or group of employees and a carrier or carriers *growing out of grievances or out of the interpretation* or application of agreements concerning *rates of pay,* rules, or working conditions, including cases pending and unadjusted on June 21, 1934, shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes." (Italics supplied.)

A further provision for representation is contained in subparagraph (j), which reads:

"Parties may be heard *either in person,* by counsel, or by other representatives, as they may respectively elect, * * *." (Italics supplied.)

We have examined cases cited by plaintiff in support of its contention that the district court had jurisdiction of this case, including Moore v. Illinois Central Railroad Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089. In view of what was said in the Moore case and in subsequent decisions of the United States Supreme Court, we do not believe that Moore is applicable to the case at bar. In Slocum v. Del. L. & W. R. Co., 339 U.S. 239, at 240, 70 S.Ct. at 577, 578, 94 L.Ed. 795, the court said:

"Section 3 of the Railway Labor Act confers jurisdiction on the Na-

tional Railroad Adjustment Board to hold hearings, make findings, and enter awards in all disputes between carriers and their employees 'growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions * *.' The question presented is whether state courts have power to adjudicate disputes involving such interpretations when the Adjustment Board has not acted.

"The respondent railroad has separate collective-bargaining agreements with the Order of Railroad Telegraphers and the Brotherhood of Railway Clerks. A dispute arose between the two unions concerning the scope of their respective agreements. * * *"

and, 339 U.S. at page 241, 70 S.Ct. at page 578, 94 L.Ed. 795, the court added:

"Instead of invoking the jurisdiction of the Adjustment Board, the railroad filed this action for declaratory judgment in a New York state court, naming both unions as defendants. It prayed for an interpretation of both agreements, and for a declaration that the Clerks' agreement, not the Telegraphers', covered the jobs in controversy. * * *"

339 U.S. at 243, 70 S.Ct. at 579, 94 L. Ed. 795, the court said:

"The paramount importance of having these chosen representatives of railroads and unions adjust grievances and disputes was emphasized by our opinion in Order of Conductors v. Pitney, [326 U.S. 561, 66 S. Ct. 322, 90 L.Ed. 318] supra. There we held, in a case remarkably similar to the one before us now, that the Federal District Court in its equitable discretion should have refused 'to adjudicate a jurisdictional dispute involving the railroad and two employee accredited bargaining agents * * *.' Our ground for this holding was that the court 'should not have interpreted the contracts' but should have left this question for de-

termination by the Adjustment Board, a congressionally designated agency peculiarly competent in this field. 326 U.S. at 567–568 [66 S.Ct. at page 325, 90 L.Ed. 318]. This reasoning equally supports a denial of power in any court—state as well as federal—to invade the jurisdiction conferred on the Adjustment Board by the Railway Labor Act.

"Our holding here is not inconsistent with our holding in Moore v. Illinois Central R. Co., 312 U.S. 630 [61 S.Ct. 754, 85 L.Ed. 1089]. * * *"

339 U.S. at 244, 70 S.Ct. at 579, 94 L. Ed. 795, the court further said:

"We hold that the jurisdiction of the Board to adjust grievances and disputes of the type here involved is exclusive. * * *"

We hold that the district court was justified in dismissing plaintiff's action, because plaintiff was asking primarily for an interpretation of an existing bargaining agreement and the jurisdiction to entertain such a proceeding was vested exclusively in the Adjustment Board.

2. Moreover the district court had no diversity jurisdiction of this case, because the complaint fails to allege the location of the principal place of business of defendant.

28 U.S.C.A. § 1332(c) provides:

"For the purposes of this section and section 1441 of this title, a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."

Under this statutory provision it is obvious that the corporation is endowed with dual citizenship. First, it is deemed a citizen of the state of its incorporation and, secondly, it is considered a citizen of the state where it has its principal place of business. In order for a plaintiff to invoke the jurisdiction of a federal district court in a

suit against a corporation, the complaint must affirmatively allege both that it was not incorporated in the state where the district court sits *and* that it has not presently its principal place of business in that state. Only the first of these requirements has been met by the plaintiff in the case at bar. Failure to allege the second requirement is fatal to the jurisdiction of the district court.[1]

For these reasons, the judgment of the district court is affirmed.

Judgment affirmed.

---

1. We are informed in the brief filed by defendant in this court that its principal place of business is in the state of Illinois and this statement has not been challenged by plaintiff's counsel either in the brief or during oral argument.