**UNITED STATES of America,**
**Plaintiff,**

v.

**180.37 ACRES OF LAND, MORE OR LESS, Situate IN DICKENSON COUNTY, COMMONWEALTH OF VIRGINIA, Defendants.**

**Civ. A. No. 64–C–56–R.**

United States District Court
W. D. Virginia,
Roanoke Division.

May 31, 1966.

John M. Stephens, Stephens, Combs & Page, Pikeville, Ky. and Glyn R. Phillips, Clintwood, Va., for Atomic Fuel Co., Inc.

Thomas B. Mason, U. S. Atty., and James C. Roberson, Asst. U. S. Atty., Roanoke, Va., for the United States.

## OPINION

DALTON, District Judge.

This is an action of a civil nature brought by the United States of America at the request of the Secretary of the Army for the taking of property under power of eminent domain in connection with the construction, operation, and maintenance of the John W. Flannagan Dam and Reservoir, Pound River, Dickenson County, Virginia, and for the as-

certainment and award of just compensation to the owners and parties in interest.

The complaint was filed on June 4, 1964, together with a declaration of taking and a judgment on declaration of taking vesting title to the estate defined therein in and to the properties described therein in the United States of America on June 4, 1964.

Federal Rule 71A provides that in eminent domain proceedings the court may, in its discretion, order that "* * * because of the character, location, or quantity of the property to be condemned, or for other reasons in the interest of justice, the issue of compensation shall be determined by a commission of three persons appointed by it." If a commission is appointed, its findings and report "shall have the effect, and be dealt with by the court in accordance with the practice, prescribed in paragraph (2) of subdivision (e) of Rule 53." Fed.R.Civ.P. 71A(h). Federal Rule 53(e) (2) provides: "In an action to be tried without a jury the court shall accept the master's findings of fact unless clearly erroneous." Fed.R. Civ.P. 53(e) (2). Because of the special and complex problems involved in this case, this court appointed a commission to determine the amount of just compensation due each of the parties in interest.

The ascertainment of compensation to be awarded in condemnation cases is, as best, not an easy matter, and the case at bar involves a factual situation which presents problems even more difficult than might be normally encountered. It is with such instances in mind that the drafters of the Federal Rules made specific authorization for the appointment of commissioners to value the land taken. Those appointed in this case are men whose individual knowledge of and experience with land and land values (and especially the particular problems raised with reference to coal land) in this area is great. Sitting as a group they are able to pool their individual skill and learning and bring it to bear collectively on the complex problems here involved. It goes without saying that a court will be better able to achieve its goal of affording equal justice to all of the parties involved if it is able to rely on the judgment of experts in a given field. It is for this reason that the drafters of the Federal Rules have specified that the opinions and conclusions of the commissioners, arrived at after a thorough consideration of all the facts and evidence introduced, are not to be disturbed unless "clearly erroneous."

This case involves several different tracts of land and the court will deal with each in turn. Each tract presents its own particular factual problem, but there are certain rules of law which will apply to all as regards the amount of compensation to be awarded.

■ It seems undisputed that the owner of a parcel of land which is taken under the power of eminent domain is entitled to compensation for the "highest and most profitable use" to which the property is adaptable. See Mitchell v. United States, 267 U.S. 338, 45 S.Ct. 293, 69 L.Ed. 644 (1925); United States v. Wateree Power Co., 220 F.2d 226 (4th Cir. 1955). On the other hand,

> * * * Elements affecting value that depend upon events or combinations of occurrences which, while within the realm of possibility, are not fairly shown to be reasonably probable should be excluded from consideration for that would allow mere speculation and conjecture to become a guide for the ascertainment of value * * *. Olson v. United States, 292 U.S. 246, 255, 257, 54 S.Ct. 704, 78 L.Ed. 1236 (1934).

This is the Supreme Court's classic statement of the proposition that values in condemnation proceedings may not be based purely on conjecture. However, this mandate must obviously be read in light of what is reasonable and practical, and should not be carried to illogical extremes. In the case of United States v. Silver Queen Mining Co., 285 F.2d 506 (10th Cir. 1960), the United States Court

of Appeals for the Tenth Circuit made the following observation:

> Although cash market value may not be proved with certainty the test of just compensation remains the same and the required proof [of value] need rise no higher than the circumstances permit. Some speculation is inherent in the ascertainment of value of all resource property, be it mineral, oil, gas or otherwise, and if the quality of proof of value follows the custom of the industry, is the best available, and is sufficient to allow the jury or court to make an informed estimate as to the fact of value, such proof is sufficient to meet the burden. 285 F.2d at 510.

■ In the discussion which follows, then, this court will allow no award which is based merely on conjecture. At the same time, it will recognize that no piece of property, especially if it be mineral land, has a specific and definite value and so, to some degree, "speculation" must be indulged in. It might be well at this point to make a passing reference to another field of the law in order to better understand the problems presented here. Throughout the history of American law it has been said over and over again that specific performance will be granted for a contract to sell realty because of the idea that each piece of property is unique and hence not susceptible to definite valuation. This well established doctrine clearly shows that the courts in this country recognize that each time a piece of realty has a definite value placed upon it, a certain amount of speculation is involved.

■ It was the duty of the commissioners in this case to place a definite value on each piece of property involved, and the court will now consider their findings.

### TRACT NUMBER 1221—39.64 ACRES

■ This tract consists of "bottom land, crop land, pasture land, woodland and waste land," (See Report of Commissioners, p. 2) and the commission found its total value to be $10,270.90. On pages three and four of their report, the commissioners listed separately the value of each part of the tract which they considered.

There does not seem to be any really serious contention by the government that this figure does not represent just compensation for Tract 1221, although exceptions to the report were filed. This court will affirm the findings of the commission as to this tract, as it cannot say that they are clearly erroneous. The commissioners had the benefit of viewing the land and hearing the testimony of experts as to its value, and they, as knowledgeable men in this field themselves, arrived at the final figure after carefully considering all of the evidence before them (note especially pages 2 and 3 of the Report of the Commissioners).

On page four of the report, the commissioners said:

> At the conclusion of the evidence the Government's attorney argued that the property owners had not produced any expert evidence (Ev. 85) and were bound by what we saw and expert evidence. * * * In many kinds of cases there are more than one kind of expert witnesses. Adams v. Ristine, 138 Va. 273, 295 [122 S.E. 126, 31 A.L.R. 1413]. We conclude the defendants' witnesses were competent. Mont. Rv. v. Warner [Warren], 137 U. S. [348] 353 [11 S.Ct. 96], 34 L.Ed. 181 [681]; Kerr v. Clinchfield Coal Co., 169 Va. 149 [192 S.E. 741], approved 3 Wig.Ev. (3rd) 23.

The court agrees with this conclusion of the commission.

### TRACTS NUMBERS 111–1, 111–2, 111–3 and 111E–4—61.38 ACRES

It appears that Ruth Hayter is the fee simple title owner of the surface of all four tracts and, in addition, owns the coal under ten acres of tract 111–1 (Tr. 270). The Pittston Company and Steinman Development Company own the coal under the remainder of the surface, and the Atomic Fuel Company holds an assignment of a purported lease for mining coal which lease was executed by Steinman and the Pound River Coal Company.

This assignment embraces a portion of the tracts in question. The Pittston and Steinman companies have made a settlement with the government as to their rights in the land, and the assignment to Atomic was dealt with in a separate opinion. Miss Hayter's interest, then, is the only one which remains to be considered with reference to tracts 111–1, 111–2, 111–3, and 111E–4.

■ As regards the surface, the declaration of taking values it at about seventy dollars per acre. Miss Hayter places the value at one hundred thirty-five dollars an acre, and her expert witness fixes a fair price at eighty dollars an acre. The commission decided that the value of the entire two hundred twenty acres owned by Miss Hayter was eighty dollars an acre, "but as the portion taken is from the branch up the hillside 600 feet where it is common knowledge the best timber grows, and the Government has made a cut in the hillside almost vertical from 35 to 70 feet high (Ev. 295) which definitely restricts her access to the remainder in accordance with Instruction No. 13, we have fixed the value of 61.38 acres taken at $100.00 per acre * * *" Report of Commissioners, p. 6. Here again, the court cannot say that this value is clearly erroneous, as it was arrived at by men with knowledge of land values in the area involved.

Miss Hayter strongly contends that the coal underlying part of tract 111–1 should be considered when determining the value of her interest in the land which was condemned. The calculations of her expert Civil Mining Engineer estimate that there are 31,124 tons of coal (based upon a 70% recovery) recoverable from 8.33 acres of the ten acre tract, (Tr. 291) and Miss Hayter testified that she had a definite offer of twenty-five cents per ton royalty for the coal under this tract (Tr. 277, 280). The government argues that it is uncertain that there is any coal at all under the land, and that certainly the amount is speculative. "On the other hand this seam of coal is being mined within 300 feet and shows every-thing favorable and the facts indicate this 10 acres is good (Ev. 296). 248,000 tons have been mined from 57.7 acres from this seam in sight downstream (Ev. 237), and an excavation by the side of it shows it is good and besides it appears good enough that Atomic is preparing to spend quite a sum to develop the adjoining coal, on the recommendation of a mining engineer of many years of experience, that he has every reason to believe the coal is good (Ev. 265), and a man of experience representing one of the largest coal selling agencies says this coal is worth $5.00 per ton (Ev. 121)." Report of Commissioners, p. 7.

The commissioners concluded that Miss Hayter was entitled to $13,118.40 for her interest in tracts 111–1, 111–2, 111–3 and 111E–4. The government strongly challenges the method used by the commission in arriving at the value of Miss Hayter's interest, especially insofar as the amount of coal underlying tract 111–1 entered into the calculation.

■ Probably the most common method of arriving at a value for land of this sort is the so-called "comparable sales" method, whereby recent sales of similar tracts of land in the same general area are compared in arriving at the fair market value of the land in question. However, no evidence of comparable sales was introduced with reference to Miss Hayter's land, and from this it must be assumed that no such evidence was available. Obviously, then, the comparable sales method cannot be employed here. Just as obvious is the fact that some value had to be arrived at to compensate Miss Hayter for the taking of her property, and the court cannot say that the conclusion reached by the commission was clearly erroneous.

An interesting recent case is United States v. 237.500 Acres of Land, 236 F. Supp. 44 (S.D.Cal.1964), where the California Court reviewed numerous decisions relating to valuation of land in condemnation proceedings, and concluded that the unit measure system was an acceptable method of arriving at just compensation. The Court estimated the total

number of tons of pumice in two mines, then multiplied that figure by the value per ton of the pumice in place. The opinion quoted Miller v. United States, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336 (1943), wherein the United States Supreme Court said:

> It is conceivable that an owner's indemnity should be measured in various ways depending upon the circumstances of each case and that no general formula should be used for the purpose. * * * Courts have had to adopt working rules in order to do substantial justice in eminent domain proceedings. 317 U.S. at 373, 374, 375, 63 S.Ct. at 280.

The Court in *Miller* went on to say that in an effort to find some practical standard upon which to base compensation, courts have adopted "market value." It was the feeling of the commissioners that the method employed in ascertaining the market value of Miss Hayter's interest was the most logical one to use "in order to do substantial justice". under the facts and circumstances of this case, and this Court cannot say that this conclusion is clearly erroneous.

In Cade v. United States, 213 F.2d 138 (4th Cir. 1954), the United States Court of Appeals for the Fourth Circuit held that the value of a deposit of granite should be considered in determining the overall value of the land in question. As authority for this proposition, the Fourth Circuit Court quoted the following from the opinion in National Brick Co. v. United States, 76 U.S.App.D.C. 329, 131 F.2d 30, 31 (D.C.Cir.1942):

> And we know of no other evidence by which the jury could be properly guided in determining the value of the property than to be told the per ton value of the sand as it lay, or, without this knowledge, how the jury could ever have reached a judgment based on anything more than guess or speculation.

It is the opinion of this court that the method used in arriving at the market value of Miss Hayter's interest in her land involved, under the facts of this case, the least amount of speculation and conjecture. The amount of recoverable coal was calculated by a qualified and experienced engineer, and the minimum royalty figure used was shown by the evidence to be a conservative one. This was considered along with evidence of surface value in arriving at the final figure of $13,118.40. In light of the evidence which was available, any other figure would have been an arbitrary guess.

The commissioner's award reflects their opinion of the total value of tracts 111–1, 111–2, 111–3 and 111E–4, taking into account the evidence relative to the coal deposits under ten acres of tract 111–1. It is the opinion of this court that all the factors which the commission used to aid in its determination were proper ones for its consideration.

TRACT NUMBER 404—22.70 ACRES

The portion taken here is 22.70 acres fee simple surface of a 54 acre tract of a former subsistence farm. The portion formerly cultivated has grown up in weeds, briars, and scrubby brush, and the buildings and fences have deteriorated until practically worthless. The government's witness fixed the value of this tract at a little more than sixty-one dollars per acre, while the defendants place a value on the whole "farm" of one hundred twenty-five dollars per acre. The commissioners concluded that the surface taken was reasonably worth eighty dollars per acre if no other circumstances were present. In this, the court cannot say their decision is clearly erroneous.

The commissioners were of the opinion, however, that tract 404 had value in addition to its intrinsic value as realty, and it is to this determination that the government strongly objects. It seems that a quantity of coal owned by the Pittston Company lay behind tract 404 and, according to a qualified Civil Mining Engineer, the only economically feasible way to take out coal which was mined from this land was over the tract in question. (Tr. 30). The engineer calculated that there were 528,642½ tons of coal (based on a 65% recovery) recover-

able from the Pittston property. Since Pittston did not have the right to haul its coal over tract 404, it would have to pay for this privilege, presumably on a per ton basis. This type of payment is called "wheelage" and is recognized in this area as an acceptable practice. See: Preston Mining Co. Inc. v. Matney, 197 Va. 520, 90 S.E.2d 155 (1955); Raven Red Ash Coal Co., Inc. v. Ball, 185 Va. 534, 39 S.E.2d 231, 167 A.L.R. 785 (1946). The testimony indicates that two and one half to three cents per ton is the usual wheelage amount. (Tr. 31). The commissioners decided that tract 404 was in a strategic location with respect to the coal lands behind it, and that the highest and best use to which this property was adaptable was not as a subsistence farm, but rather as a sort of toll road which would enable the owners to collect wheelage from Pittston.

■ It is not clear from the evidence whether any wheelage had been collected from Pittston before the condemnation proceedings were commenced. However, this fact is immaterial in assessing the award. In United States v. Wateree Power Co., supra, the Fourth Circuit held that in determining the value of condemned land which was located on the bank of a river and was suitable for industries using large amounts of water the commissioners' consideration, in making the award, of the probabilities that the land would have been used for such purposes had it not been taken by the government was not error, even though no such use was being made of that or any nearby land on the river at that time. "The special value of land due to its adaptability for use in a particular business is an element which the owner of the land is entitled, under the Fifth Amendment, to have considered in determining the amount to be paid as the just compensation upon a taking by eminent domain." Mitchell v. United States, 267 U.S. 338, 344–345, 45 S.Ct. 293 (1925).

The Supreme Court of the United States considered a similar situation in Monongahela Navigation Co. v. United States, 148 U.S. 312, 13 S.Ct. 622, 37 L.Ed. 463 (1893). In that case, a canal was condemned, and the Court held that the value of the property depended largely on its productiveness—the franchise to take tolls. For this reason, the Court reasoned that the toll for each use of the canal must enter into and largely determine the matter of value.

■ The commissioners found that, taking into account all the facts and circumstances of the situation, the total value of tract 404 should be placed at $12,388.84, and in this conclusion the court cannot say that they were clearly wrong.

It should be noted that the court is *not* giving compensation here for lost future profits from a business venture. It is merely awarding payment for the highest and most profitable use to which the property is adaptable, and in ascertaining this value, the strategic location which would enable the owner to collect wheelage is taken into account. In theory, the method of ascertaining the award to be paid Ruth Hayter for her coal interests has much in common with the method employed with respect to tract 404, and much of what was said in that discussion is equally applicable here.

### TRACT NUMBER 102

The government and the defendants reached an agreement for this tract, and so the commissioners made no finding as to compensation.

### TRACT NUMBER 1011—4.36 ACRES

Tract number 1011 was valued by the government at $150.00 and the commissioners adopted this finding. The court cannot say that it is clearly erroneous.

### TRACT NUMBER 1012—1.74 ACRES

Tract number 1012 was valued by the government at $75.00 and the commissioners adopted this finding. The court cannot say that it is clearly erroneous.

### TRACT NUMBER 1211—23.41 ACRES

Tract number 1211 was valued by the government at $850.00 and the commissioners adopted this finding. The court cannot say that it is clearly erroneous.

TRACT NUMBER 518—21.79 ACRES

Tract number 518 was valued by the government at $800.00 and the commissioners adopted this finding. The court cannot say that it is clearly erroneous.

It is the judgment of this court that the commissioners' awards of compensation for the tracts discussed herein be affirmed. The court certainly cannot say that any of the awards are clearly erroneous. As a matter of fact, this court is of the opinion from the record that said awards and each of them are fair, reasonable and proper to the parties concerned.

An order will be entered to this effect.