**Harold D. FRENCH and Wanda French, Plaintiffs,**

v.

**CLINCHFIELD COAL COMPANY, a Division of the Pittston Company, Defendant.**

**Civ. A. No. 75–199.**

United States District Court, D. Delaware.

Jan. 6, 1976.

14

Walter P. McEvilly, Jr., and Richard P. S. Hannum of Prickett, Ward, Burt & Sanders, Wilmington, Del., for plaintiffs.

S. Samuel Arsht, and A. Gilchrist Sparks, III, of Morris, Nochols, Arsht & Tunnell, Wilmington, Del., for defendant.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

Plaintiffs, Harold and Wanda French ("the Frenches") own real property located in Dickenson County, Virginia.[1]

1. All the facts recited in this Opinion are taken from the allegations of the complaint, which must be taken as true for the purposes of this motion. See, *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); *Walker, Inc. v. Food Mach. and Chem. Corp.,* 382 U.S.

The Frenches are citizens and residents of Virginia, living on the parcel which they own. The defendant, Clinchfield Coal Co. ("Clinchfield"), is a corporation chartered by the States of Delaware and Virginia, and owns the mineral rights to coal, gas and oil lying under the Frenches' property.[2] These rights are being exercised by Clinchfield to the extent that it operates a coal mine in the area. The Frenches' complaint alleges that the mining operations have destroyed the water supply to their farm by lowering the levels of the springs which feed it; and that continued mining operations may make it impossible to replace the existing water supply with another, since most or all of the wells in the area have been similarly affected. The Frenches also claim that as a part of the mining operations, Clinchfield transports coal through tunnels underneath their property, thereby entitling them to the payment of "wheel-right royalties".[3]

The defendant did not answer the complaint but filed a motion to dismiss the action for lack of diversity jurisdiction under 28 U.S.C. § 1332. Clinchfield also asserted that even if the Court should find jurisdiction, the action is local in character and therefore, under the doctrine of *Livingston v. Jefferson,* 15 Fed.Cas. 660 (No. 8411) (C.C.D.Va. 1811) and its progeny, venue exists only in Virginia where the action has already been dismissed;[4] and thus, the complaint failed to state a claim upon which relief could be granted. Fed.R.Civ.Proc. Rule 12(b)(6).

This case presents questions which have not been authoritatively dealt with in this Circuit on the meaning of certain amendments to 28 U.S.C. § 1332(c). The Court, after carefully considering the argument of counsel, has determined that the action, although transitory in character, must be dismissed for lack of diversity.

VENUE

■ Under 28 U.S.C. § 1391, venue exists in the District Court wherever a corporation is incorporated, is licensed to do business, or is found doing business.[5] Although it does not contain any exceptions by its own terms, it has long been interpreted to include only "non-local" or "transitory" actions. Since the opinions of Chief Justice Marshall and Judge Tyler in the *Livingston* case, *supra,* 15 Fed. Cases 660, "local" actions may be tried only in the District in which the property is found.[6]

The rule exists for salutory reasons. It prevents courts unfamiliar with local property rights and laws from interfering with the title to real property. Moreover, since such actions often involve the testimony of local witnesses concerning the cause of action and the historical usages of the property, the restricted venue makes it more likely that the action will be tried in a convenient forum with full disclosure of all relevant facts, and notice to all interested parties. *See, Livingston, supra.* The question not completely answered by Mr. Chief Justice Marshall's opinion, however, was what constituted a "local action".

■ This Court will not engage in an exhaustive survey of all the cases dealing with the "local"—"transitory" prob-

---

172, 175, 86 S.Ct. 347, 15 L.Ed.2d 247 (1968); 2A Moore's Federal Practice, ¶ 12.08 at notes 3, 4. The Frenches purchased the property in 1966 as "tenants by the entireties with survivorship". Complaint, Docket No. 1, ¶ 3.

2. These rights were granted by a previous owner. Complaint, *supra,* ¶¶ 4, 5.

3. The Court assumes this term to be the equivalent of "wheelage"; *see, United States v. 180.37 Acres of Land,* 254 F.Supp. 678, 683–84 (W.D.Va.1966).

4. The action in Virginia had been filed in federal court and was dismissed as lacking in diversity, *per* Turk, C. J., on June 11, 1975. *See, French v. Clinchfield Coal Co.,* Civil Action No. 74–237–A (W.D.Va.1975).

5. 28 U.S.C. § 1391 is the general venue statute, covering both diversity and non-diversity cases.

6. *Ellenwood v. Marietta Chair Co.,* 158 U.S. 105, 107, 15 S.Ct. 771, 39 L.Ed. 913 (1895).

lem.[7] It is sufficient to point out that generally those cases which have been found to be local involved either title to property; injunctive relief to stop the injury to property; or an action for trespass (the issue in *Livingston,* itself) or waste.[8] Actions at law, on the other hand, even though involving real property, have often been seen as transitory.[9] While the distinction is not so simplistic as to lie merely between equity and law, or even as has been urged by Professor Moore between those actions which are "in rem" and those which are not,[10] such an analysis provides a starting point. If an action is not "in rem" or does not otherwise deal with title to specific real property directly and necessarily, the defendant must show some reason why the usual policy of trying an action in the district in which process was served, ought not to be followed.[11] The case

here in issue involves the injuries which accrued to the plaintiffs from the mining operations of the defendant. There is no attempt to overturn the mineral rights presently held by the defendant, and no attempt to seek injunctive relief to halt the operations which led to the injury. The relief sought by the plaintiffs is monetary, and as to the wheelage royalties, quasi-contractual in nature. *See generally, United States v. 180.37 Acres of Land,* 254 F.Supp. 678, 684 (W.D.Va. 1966). The defendant must show some reason why such a quasi-contractual action is not transitory, and Clinchfield has failed to do so. There have been no allegations or statements in an affidavit that title to the land is in issue; or that the right to royalties cannot be resolved by examining the scope of the mineral rights granted to Clinchfield. Nor are there allegations that proof will be inconvenient or impossible, or merely diffi-

---

7. *See, e. g., Ellenwood v. Marietta Chair Co.,* 158 U.S. 105, 15 S.Ct. 771, 39 L.Ed. 913 (1895); *Huntington v. Attrill,* 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed.2d 1123 (1892); *Still v. Rossville Crushed Stone Co.,* 370 F.2d 324 (6th Cir. 1966); *Pasos v. Pan American Airways, Inc.,* 229 F.2d 271 (2d Cir. 1956); *Shell Petroleum Corp. v. Moore,* 46 F.2d 959 (5th Cir. 1931); *Peyton v. Desmond,* 129 F. 1 (8th Cir. 1904); *Hasburgh v. Executive Aircraft Co.,* 35 F.R.D. 354 (W.D.Mo.1964); *Connell v. Algonquin Gas Transmission Co.,* 174 F.Supp. 453 (D.R.I. 1959); *Big Robin Farms v. California Spray Chem. Corp.,* 161 F.Supp. 646 (W.D.S.C.1958); *Tuscarora Nation of Indians v. Power Auth. of New York,* 161 F.Supp. 702 (S.D.N.Y.1958); *Fox v. Warner Bros. Pictures, Inc.,* 95 F.Supp. 360 (D.Del.1950); *Potomac Milling & Ice Co. v. Baltimore & O. R. Co.,* 217 F. 665 (D.Md. 1914); *Kentucky Coal Lands Co. v. Mineral Div. Co.,* 191 F. 899, 910 (C.C.E.D.Ky.1911); *Elk Garden Co. v. T. W. Thayer Co.,* 179 F. 556 (C.C.W.D.Va.1910); *Rundle v. Del. & R. Canal Co.,* 21 Fed.Cas. 10 (No. 12,139) (C.C.E. D.Pa.1849); and *Foot v. Edwards,* 9 Fed.Cas. 358 (No. 4,908) (C.C.D.Conn.1855). *See generally,* Annotation, 42 A.L.R. 196 (1926).

8. *See e. g., Tuscarora Nation of Indians v. Power Auth. of New York,* 161 F.Supp. 702 (S.D.N.Y.1958) (condemnation); *Elk Garden Co. v. T. W. Thayer Co.,* 179 F. 556 (C.C.W.D. Va.1910) (ejectment); *Still v. Rossville Crushed Stone Co.,* 370 F.2d 324 (6th Cir. 1966) (injunctive and monetary relief); *Connell v. Algonquin Gas Transmission Co.,* 174 F.Supp. 453 (D.R.I.1959) (injunctive and mone-

tary relief); *Pasos v. Pan American Airways, Inc.,* 229 F.2d 271 (2d Cir. 1956) (trespass); *Shell Petroleum Corp. v. Moore,* 46 F.2d 959 (5th Cir. 1931) (trespass); and *see also, Fox v. Warner Bros. Pictures, Inc.,* 95 F.Supp. 360 (D.Del.1950) (statutory action for waste).

9. *See generally, Ellenwood v. Marietta Chair Co.,* 158 U.S. 105, 15 S.Ct. 771, 39 L.Ed. 913 (1895) (conversion of timber is a transitory action, but when included in a single count with trespass it will be considered local); *Fox v. Warner Bros. Pictures, Inc.,* 95 F.Supp. 360 (D.Del.1950) (a statutory action for waste dismissed on other grounds, but Court retained jurisdiction of the counts based on covenants in a lease of properties in New Jersey).

10. *See,* 1 Moore's Federal Practice ¶ 0.142[2.– 1] at 1362. As Professor Moore notes, Chief Justice Marshall's opinion in *Livingston* analyzed the situation in terms of "in rem" actions, and criticized the historic rule, but nonetheless felt compelled to follow it because of precedent. *See, Livingston v. Jefferson,* 15 Fed.Cas. 660 (No. 8411) (C.C.D.Va.1811), at 664.

11. There has been much discussion in the case law and the treatises as to whether federal or local law ought to control in determining whether an action is local or transitory. *See, e. g., Hasburgh v. Executive Aircraft Co.,* 35 F.R.D. 354, 355 (W.D.Mo.1964); and 1 Moore's Federal Practice, ¶ 0.142[2].

It appears that the controlling case in this district is Judge Rodney's decision in *Fox, supra,* 95 F.Supp. at 361, that state law con-

cult because of the distance witnesses might have to travel.

Further, the fact that one count of the action is for damages arising from the loss of water is not sufficient to make the suit one local in character. As several opinions have made clear,[12] except where the cause of action is clearly and traditionally one deemed local, i. e., waste, trespass, or title, the Court must determine what issues will be a matter of proof, and whether those issues are of such character as to require the case to be heard by a local court. The issues here go principally to the relation between Clinchfield's mining operation and the lowering of the water table. Although diversion of a water supply might be seen as local in character,[13] the cases indicate that they are triable both where the diversion occurs, and where the injury is felt. Courts have thus not restricted such cases as has been done with trespass actions, but have allowed plaintiffs to sue where the defendant is located, though the injury did not occur there. The rule in *Livingston* has long been criticized as a "blind adherence to precedents"[14] and this Court, though understanding the rationale of such a rule, will limit its application to those cases where the underlying issues make the application reasonable.

It would prove too much to accept the defendant's claim that all actions involving real property in any way must be seen as "local". *Livingston* has not and does not stand for that proposition in this district. *See, Fox Pictures, supra.* Where, as here, the action is not shown to have an effect on the continued ownership or use of the property, but involves only monetary damages for the injury done to the owner, the action is transitory, and venue lies where the defendant is found.[15] Clinchfield's motion to dismiss on these grounds is therefore denied.

## DIVERSITY JURISDICTION.

Clinchfield has also moved to dismiss this action on the grounds that there is. no diversity between the parties.[16] If the defendant corporation were chartered only in Delaware, there is no doubt that diversity would exist.[17] The difficulty in this case arises from the fact that the corporation is chartered in both Delaware and Virginia. The core of the issue before this Court is the varying interpretations put on the language of 28 U.S.C. § 1332(c) by the parties.[18]

---

trols. As noted by Judge Rodney, there appears to be no pertinent Delaware decision and it is not clear that the distinction is recognized in Delaware courts. *But cf., Blaustein v. Standard Oil Co.,* 5 Terry 145, 56 A.2d 772, 785 (Del.Super.Ct.1947); *Cf.,* Del.Const. of 1897, art. I, § 9, " . . . [E]very action shall be tried in the county in which it shall be *commenced.*" (emphasis added).

This Court need not now decide whether Delaware law or federal law would be controlling, since it is of the opinion that in each instance the analysis would be the same; that is, whether the Court here may try the action is dependent on the issues to be resolved in the action, and the method by which a decree would be enforced.

12. *Huntington v. Attrill,* 146 U.S. 657, 669 (1892); *see also, Potomac Milling & Ice Co. v. Baltimore & O. R. Co.,* 217 F. 665 (D.Md.1914).

13. *Rundle v. Delaware & R. Canal Co.,* 21 Fed. Cas. 10 (No. 12,139) (C.C.E.D.Pa.1849); *Foot v. Edwards,* 9 Fed.Cas. 358 (No. 4908) (C.C.D. Conn.1855).

14. *See, Fox v. Warner Bros. Pictures, Inc.,* 95 F.Supp. at 361.

15. *See generally, Ladew v. Tennessee Copper Co.,* 218 U.S. 357, 31 S.Ct. 81, 54 L.Ed. 1069, 367–69 (1910).

16. There being no federal cause of action, diversity is necessary if there is to be jurisdiction.

17. Clinchfield's principal place of business is in West Virginia, and therefore unless chartered in Virginia, it would not have citizenship there under 28 U.S.C. § 1332(c). Just as clearly, of course, diversity does not exist in Virginia since the corporation is chartered there. *See* note 4 *supra.*

18. "(c) For the purposes of this section . . . ., a corporation shall be deemed a citizen of any state by which it has been incorporated and of the State where it has its principal place of business: . . . ." The discussion herein is limited to those situations in which a corporation is chartered in more than one state. Similar problems arise when a cor-

Plaintiffs contend that the language of § 1332(c) must be read in light of previous case law; and that the case law was changed only in part by the amendments passed in 1958.[19] That case law provided a "forum rule" which recognized only the incorporation of the state in which the Court sat: the fact that the corporation was chartered in another state was of no import.[20] The effect of this rule was a broader jurisdiction in the courts than at present, and an ability on the part of a corporation chartered in one state, but headquartered in another, to have actions brought against it in its main place of doing business removed to federal courts.[21] The 1958 amendments, say the Frenches, were designed only to affect the ability of such multi-state corporations to remove their cases to federal court.

Defendant Clinchfield agrees that the "forum rule" as it once operated would have allowed this action, but points out that this rule was substantially altered by Supreme Court interpretations prior to the amendments,[22] and eliminated by the 1958 amendments.

The direct interpretations of the language of the section since *Jacobson* and the amendments are sparse indeed. The Court has been cited to only one case directly on point, and its own research has disclosed no others.[23] In *Hudak,* Judge Wyatt found the legislative history of the amendments to be concerned with the right of removal from state courts, and after consideration held the forum rule not to be affected as it applied to suits brought by residents of a sister state against a corporation chartered in both the sister state and the forum state. *See, Hudak, supra,* 238 F.Supp. at 792; that is, under *Hudak,* the out-of-state incorporation of the defendant was ignored, and diversity held to exist.

Within this Circuit, there have been only dicta pronouncements on this problem.[24] Moreover, the Third Circuit opinions issued prior to the amendments seem to be aimed at carving out an exception which would allow the forum rule to continue to apply in this situation.[25]

poration is chartered in one state and has its principal place of business in another, and is sued by a citizen of either in federal court. *See, e. g., Dining Car Employees Local No. 385 v. Chicago, M. St. P. & P. R. Co.,* 323 F.2d 224 (7th Cir. 1963).

19. *See,* Act of July 25, 1958, 72 Stat. 415, § 2(c). "For the purposes of this section . . . a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."

20. *See, e. g., Railway Co. v. Whitton,* 80 U.S. (13 Wall.) 270, 283, 20 L.Ed. 571 (1872). Under *Whitton, only* the incorporation of the state wherein the court sat could be recognized.

21. *See,* Senate Report 1830 (1958), *reprinted in* 1958 U.S.Code Cong. & Adm.News, 3099, 3101–02. *See also,* the Report of the Committee of the Judicial Conference of the United States on Jurisdiction and Venue, *reprinted at* 1958 U.S.Code Cong. & Adm.News, 3114, 3119–20.

22. *See, Jacobson v. New York, N. H. & H. R. Co.,* 347 U.S. 909, 74 S.Ct. 474, 98 L.Ed. 1067 (1954), and cases cited in *Fitzgerald v. South-*

*ern Ry.,* 176 F.Supp. 445, 446 (S.D.N.Y.1959). *Jacobson* was a *per curiam* affirmance of a First Circuit opinion, 206 F.2d 153 (1st Cir. 1953) adhering to the rule announced in *Seavey v. Boston & M. R. R. Co.,* 197 F.2d 485 (1st Cir. 1952) that a corporation chartered in the forum state and another state did not have diverse citizenship from a citizen of the forum state because of the additional charter.

23. *Hudak v. Port Authority Trans-Hudson Corp.,* 238 F.Supp. 790 (S.D.N.Y.1965).

24. *Lang v. Colonial Pipeline Co.,* 266 F.Supp. 552 (E.D.Pa.1967); *Lawson v. United House of Prayer for All People,* 252 F.Supp. 52 (E.D.Pa. 1966).

25. The Third Circuit had followed a rule opposite to that approved in *Jacobson,* prior to that decision. *See, Gavin v. Hudson & Manhattan R. Co.,* 185 F.2d 104 (3d Cir. 1950); and *Bartron v. Delaware Joint Toll Bridge Comm.,* 216 F.2d 717 (3d Cir. 1954), *cert. denied,* 348 U.S. 943, 75 S.Ct. 364, 99 L.Ed. 738 (1955). After *Jacobson,* the Circuit Court narrowed the *Gavin* rule using language which might be thought to save the jurisdiction asserted here. "In its brief the defendant relies on [*Jacobson* ] . . . It was there held that multi-state corporations,

This Court, after a careful examination of the legislative history, and the cases cited *supra,* as well as the analysis presented by both Professor Moore [26] and Professor Wright [27] favoring the abolition of the forum rule, has determined that the policy favored by Congress in the passage of the amendments and the need for regularized, simple rules,[28] require that the forum rule be seen as changed by the amendments; and that this case must be dismissed as lacking in diversity.

■ There is no doubt that Congress in the passage of the amendment hoped to reduce the diversity caseload of the federal courts. Moreover, the amendment was the product of recommendations from the Judicial Conference of the United States urging that such a reduction was required.[29] That need has certainly not declined over the last several years: diversity jurisdiction is still a major burden on the federal courts.[30] While the language used by Congress is not as explicit as one might desire, the Court must give effect to the intent of Congress where it can be determined.[31]

There are, of course, competing policy considerations. The Frenches have urged that if Congress wanted to change the rule, it could have used language much more specific. *See, Hudak, supra,* 238 F.Supp. at 792. From that they draw the conclusion that Congress desired to discourage forum shopping by defendant corporations, who would shift their cases to federal courts merely on the fiction that their incorporation was the sole indice of citizenship. The Frenches also urge that they are within that group which diversity jurisdiction was originally designed to protect: those who would suffer bias from having the case tried in the local state courts.[32] They fear that a suit brought in Virginia state court in the county where the injury occurred would inevitably result in a verdict for Clinchfield, which is the major industry and employer in the area. Since Clinchfield chose to incorporate in Delaware, as well as Virginia, they argue, it will suffer no prejudice from having its case tried where it is a citizen, while the Frenches would have the benefit of a jury whose sympathies would not be blunted by the fear of economic reprisal or other effects of a verdict favorable to the plaintiffs.

■ It is true that diversity jurisdiction was included in both the Constitution and statutes in order to protect some individuals from the perceived bias of local courts. But those to be protected were those from out of the state, against whom bias would arise from the dislike of strangers who were suing friends and neighbors of the venire.[33] The law has designed other remedies for the bias of the sort raised here: this

---

being citizens of each state of their incorporation, *cannot be sued in a federal court on the basis of diversity by a citizen of the state in which the district court sits if the corporation is also incorporated therein.* Insofar as our opinions in [*Gavin* and *Bartron* ], hold to the contrary, they are no longer the law." (emphasis added). *DiFrischia v. New York C. R. Co.,* 279 F.2d 141, 143 (3d Cir. 1960).

**26.** 1 Moore's Federal Practice, ¶ 0.78[2].

**27.** 13 Wright, Miller and Cooper, Federal Practice and Procedure, § 3626 (1975).

**28.** *See, Gavin, supra,* 185 F.2d at 106.

**29.** *See,* Report of the Judicial Conference of the United States, Committee on Jurisdiction and Venue, *reprinted at* 1958 U.S.Code Cong. & Adm.News, 3114.

**30.** *See generally,* 1975 Annual Report of the Director, Administrative Office of the United States Courts, at XI–44, Table 20.

**31.** "In dealing with problems of interpretation and application of federal statutes, we have no power to change deliberate choices of legislative policy that Congress has made within its constitutional powers. Where congressional intent is discernible . . . we must give effect to that intent." *Sinclair Ref'g Co. v. Atkinson,* 370 U.S. 195, 215, 82 S.Ct. 1328, 1339, 8 L.Ed.2d 440 (1962) (footnote omitted).

**32.** *See, Pease v. Peck,* 59 U.S. (18 How.) 595, 599, 15 L.Ed. 518 (1855); *Ziady v. Curley,* 396 F.2d 873, 875 (4th Cir. 1968).

**33.** *Id.*

Court must assume that a change of venue from the local county court is possible if suit is brought in Virginia; or that a suit in Delaware state court is potentially available. Certainly the Virginia courts must be thought able to find and instruct a jury on the need for impartiality, and to have such requirements enforced by an appellate system.

The statutory language is troublesome, and certainly this Court would agree with Professor Moore that it would have been better if Congress had been clearer.[34] And no doubt, the number of cases of this sort that will arise are comparatively few, and will not in themselves pose a burden on the federal courts. Nonetheless, a jurisdictional rule which is simple, straightforward, and easily applied will be of greater benefit than one riddled with exceptions for multi-state incorporations as opposed to multi-state operations. As the Court views the law and the policies it is designed to serve, this case must be dismissed.

Submit Order.

---

**34.** *See, Hudak, supra,* 238 F.Supp. at 792, and 1 Moore's Federal Practice, ¶ 0.78[2].